## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | |
| 201 Gibraltar Road, Suite 150 | : | CIVIL ACTION |
| Horsham, PA  19044 | : | |
| Plaintiff, | : | |
| v. | : | No. |
| ROBERT V. ROMANO | : | |
| 2801 SE Monroe Street | : | |
| Stuart, FL  34997 | : | |
| and | : | |
| LINDA ROMANO | : | |
| 2801 SE Monroe Street | : | |
| Stuart, FL  34997 | : | |
| Defendants. | : | |

## **COMPLAINT**

1.      Plaintiff, AAMCO Transmissions, Inc. ("Plaintiff" or "ATI"), is a Pennsylvania

corporation, with its principal place of business located at 201 Gibraltar Road, Horsham,

Pennsylvania  19044.

2.      Defendant, Robert V. Romano ("Defendant" or "Mr. Romano"), is an adult

individual who is a citizen of the State of Florida with a principal place of business at 2801 SE

Monroe Street, Stuart, Florida 34997.

3.      Defendant, Linda Romano ("Defendant" or "Mrs. Romano"), is an adult individual

who is a citizen of the State of Florida with a principal place of business at 2801 SE Monroe

Street, Stuart, Florida 34997.

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C.A. §1332 based upon

the diverse citizenship of the parties and the amount in controversy which exceeds $75,000

exclusive of interest and costs.

5.      Venue lies in this District pursuant to 28 U.S.C.A. §1391, in that ATI resides in this District, Defendants have transacted business with ATI continuously over the last several years in this District and the claims arise under a contract that was made in this District.

6.      Since at least 1963, ATI has been engaged in the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada.  ATI is the world's largest franchisor of transmission and general automotive repair centers.

7.      On August 18, 1992, ATI and Mr. Romano entered into a franchise agreement, pursuant to which Defendant was authorized to use and did use the name and mark "AAMCO" in connection with the operation of an automotive repair center located at 1631 North 60th Avenue, Hollywood, FL 33021 (the "Center").  A true and correct copy of this franchise agreement (the "Franchise Agreement") is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

8.      From the date Mr. Romano became a franchisee going forward, and to the present day, his wife, Mrs. Romano, has at all relevant times acted as Mr. Romano's agent in business.

9.      As a franchisee, ATI disclosed to Defendant its proprietary systems, information and trade secrets for operating a successful automotive repair business which ATI had developed over several decades.

10.     In August of 1992, before operating the Center, Defendant attended ATI's intensive owner training class and was provided ATI's proprietary manuals, customer lists and software.

11.     On February 20, 2013, Defendant's Franchise Agreement with ATI was mutually terminated by the parties who formally executed a Termination of Franchise Agreement

("Termination Agreement"). A true and correct copy of the said Termination Agreement is attached hereto and made a part hereof at Exhibit "B".

12.     Pursuant to the express terms of the Termination Agreement, Defendant agreed to comply with his post term non-compete obligation at Section 19.2 of the Franchise Agreement.

13.     Section 19.2 of the Franchise Agreement, entitled "Covenant Not-to-Compete," provides in pertinent part that:

> For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center.   The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

*See* Ex. "A".

14.     Under the Franchise Agreement, the earliest date on which Defendant's non-compete obligation could expire is February 19, 2015.

15.      Defendants are nevertheless currently operating a transmission repair business at 1631 North 60th Avenue, Hollywood, FL  33021, under the name "Treasure Coast Transmissions" (the "Competing Business").  A true and correct copy of Defendant Mr. Romano's business card is attached hereto and made a part hereof at Exhibit "C".

16.     In violation of Mr. Romano's non-compete obligation owed to ATI under the Franchise Agreement, Defendants are currently operating the Competing Business well within ten (10) miles of the AAMCO Transmission Center located at 2973 SE Federal Highway, Stuart, Florida 34994. A map showing the said AAMCO location within a ten (10) mile radius of Defendants' Competing Business is attached hereto and made a part hereof at Exhibit "D".

17.     Notwithstanding ATI's demands that they comply with the non-compete obligation, Defendants continue to operate the Competing Business at its current location.

<u>COUNT I - BREACH OF FRANCHISE AGREEMENT -</u>
<u>SPECIFIC PERFORMANCE</u>

18.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 15 above.

19.     As a result of the termination of Defendant's franchise, ATI is entitled to specific performance of Section 19.2 which provides that, for a period of two years following termination, Defendants will not, directly or indirectly, engage in the transmission repair business within a radius of ten (10) miles of any AAMCO center.

20.     Defendants are currently operating the Competing Business within the ten (10) mile non-compete zone armed with ATI's confidential information and materials, trade secrets, and unique procedures and systems developed by ATI, which conduct is causing ATI irreparable harm.

21.     Further, Defendants' refusal to honor the covenant not-to-compete as stated in the Franchise Agreement interferes with ATI's ability to further develop the market, and is causing ATI irreparable harm.

22.     ATI has no adequate remedy at law for damages, and unless specific performance of the covenant not-to-compete, is ordered and injunctive relief granted, ATI will continue to suffer irreparable harm.

<u>COUNT II – COSTS AND ATTORNEYS' FEES</u>

23.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 22 above.

24.     Pursuant to Section 21.5 of the Franchise Agreement, Defendants agreed to pay all costs incurred by Plaintiff in bringing this action, including attorneys' fees.

25.     Upon the filing of this Complaint, Plaintiff ATI has incurred a filing fee of Four hundred fifty dollars ($400.00) in this matter.

26.     Plaintiff ATI has incurred and continues to incur attorneys fees in the pursuit of this action.

<u>RELIEF SOUGHT</u>

WHEREFORE, ATI requests the following relief:

A.     That Defendants, their agents, servants, employees and those persons in active concert or participation with him, be preliminarily and permanently enjoined and restrained from operating a transmission repair business for two years at or within ten (10) miles of the location of any AAMCO repair center;

B.     That Defendants be ordered to file with the Court and to serve on ATI within thirty (30) days after the issuance of any preliminary and/or permanent injunction herein, a report in writing, under oath, setting forth in detail the measures undertaken by Defendants to comply herewith;

C.     That a money judgment be entered in ATI's favor and against Defendants with respect to ATI's costs and attorney's fees as alleged in Count II above; and

D.     That ATI be awarded such other and further relief to which it may be entitled.

Date: 9/26/13

William B. Jameson
Attorney ID. # 58949
Attorney for Plaintiff
AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, Pennsylvania 19044
(610) 668-2900

# EXHIBIT A

**AAMCO TRANSMISSIONS, INC.**
Franchise Agreement

This Agreement has been entered into this 18th day of    August         19 92 at Bala Cynwyd, Pennsylvania, between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Bala Cynwyd, Pennsylvania, referred to as "AAMCO", and

Robert V. Romano                    referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted exclusively to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1    **Franchise.**   This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" only upon fulfillment of the following conditions:

(a)  Franchisee must secure a location approved in writing by AAMCO.

(b)  Franchisee must attend AAMCO's training school no later than the third class offered after receipt of approval for the center's location, and must successfully complete the training course.

(c)  Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

(d)  Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2    **Location.**  The center shall be located as follows:

(  ) County:   ( X ) MSA / PMSA          (  ) CMA:          (  ) Other:

Address:  Fort Lauderdale, Florida MSA
1631 North 60th Avenue
Hollywood, Florida 33021

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3    **Market.**   AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

2.1    **Trademark.**   Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to use any other mark or name in the operation of his center. In addition, Franchisee agrees not to register the word "AAMCO" as part of his firm or corporate name.

3.1   **Deposit.**   AAMCO acknowledges payment by Franchisee of a deposit of $ 10,000   at the signing of this Agreement. The application for franchise made by Franchisee and his deposit does not permit the operation of a center without the fulfillment of conditions (a), (b), (c), and (d) of section 1.1 of this Agreement. In addition, Franchisee must receive approval of a Board of Review of AAMCO and satisfy all requirements of the Board. An additional $ 5,000   is due three months from the date of this Agreement and an additional $ 7,500   is due prior to commencement of five week training school, unless Franchisee commences the training school less than three (3) months from the date of this Agreement, in which event, both of these sums are due prior to the commencement of the training school. The remaining sum $ 7,500   is due during attendance at the training school.

3.2   **Refundable.**   AAMCO may cancel this Agreement at any time prior to opening for failure by Franchisee to fulfill any requirements of AAMCO and refund the deposit. This refund shall be AAMCO's sole responsibility to Franchisee and this Agreement shall be null and void.

3.3   **Portions Non-Refundable.**   In the event Franchisee does not fulfill conditions (a), (b), (c), or (d) of section 1.1 of this Agreement, then AAMCO shall refund part of the deposit only. The non-refundable portion of the deposit is a reimbursement for expenses associated with the training of Franchisee and the processing of his application, including but not limited to expenses of schooling and expenses of the real estate, franchise sales and market development departments. This refund shall be AAMCO's sole responsibility and this Agreement shall then be null and void.

3.4   **Deposit Non-Refundable.**   In the event that Franchisee unreasonably delays in opening his center or refuses locations approved by AAMCO, then the entire deposit is non-refundable. The deposit is a reimbursement for the rights granted to Franchisee by AAMCO, for the expenses associated with the training of Franchisee and the processing of his application, and for the delays incurred as a result of Franchisee's failure to open. In no event shall a period of less than eight (8) months be considered unreasonable.

4.1   **License Fee.**   As an initial service and license fee Franchisee agrees to pay the sum of $ Any deposit made with this agreement shall be credited towards this initial fee.

4.2   **Franchise Fee.**   Commencing with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of seven (7) % of the gross receipts of the preceding week. "Gross receipts" shall mean all forms of consideration received for parts or services in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

4.3   **Business Reports.**   Commencing with the opening of his center, Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 4.2, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees. In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

5.1   **General Policies.**   Franchisee agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name AAMCO.

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions. Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable.

5.2   **Performance Standards.**   Except as otherwise approved in writing by AAMCO, which approval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time. Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee. Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs. Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to operate his center in such manner so as to avoid customer complaints. Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center. Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center. Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO".

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe. Franchisee further agrees to attend such meetings and training sessions as AAMCO may require and to direct any of his employees to attend such meetings and training sessions as AAMCO may require.

In his operation of the center Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO multi-check, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to vigorously and aggressively promote the repair of transmissions making the greatest possible use of the advertising, promotional, and merchandising techniques and materials provided by AAMCO. Franchisee specifically agrees to participate in all sales and promotional campaigns or activities of AAMCO.

**5.3   Appearance Standards.**   Franchisee agrees to keep his center's premises in a clean, wholesome, attractive and safe condition, and to keep it in good maintenance and repair. Franchisee agrees to maintain the interior and exterior painting and decor, and furnishings of his center in such a manner and form as may be required by AAMCO. Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

**5.4   Maintenance Standards.**   Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

Franchisee further agrees to conduct his center in accordance with AAMCO's standards.

**5.5   Non-Disclosure.**   Franchisee agrees that he will not furnish any information concerning AAMCO's service program, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO merchandising program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its merchandising program and techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

**6.1   Obligations of AAMCO.**   AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

Prior to the opening of a center, AAMCO will make available to Franchisee its customary training course concerning the operation of an AAMCO center. Expenses of travel and lodging incurred by Franchisee for his initial training program will be borne by AAMCO. After the opening of his center, AAMCO may provide a training program or programs to Franchisee and to such of his employees as AAMCO may designate. All expenses of travel, lodging, meals and other living expenses for Franchisee or his employees in subsequent programs shall be borne and paid by Franchisee.

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchise fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell. AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Appendix A of this Agreement, as Franchisee wishes from time to time to order; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

**7.1   National Advertising.**   Franchisee agrees to participate in advertising programs at the national level when established or directed by AAMCO. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

**7.2   Local Advertising.**   Franchisee acknowledges that it is mandatory to participate in advertising programs and promotional activities at the local level. Franchisee specifically agrees to adhere to a local advertising budget developed with the assistance of AAMCO.

Franchisee agrees to share local advertising expenses with other franchisees in related, adjoining, or overlapping Areas of Dominant Influence, or where coverage from local advertising may permeate, based on formulas provided by AAMCO.

Franchisee acknowledges that AAMCO reserves the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to an agency approved by AAMCO.

If Franchisee fails to pay promptly an amount due his advertising agency or his local AAMCO advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee. Franchisee recognizes that all local advertising inures to his benefit and to the benefit of all franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute his proportionate share, local advertising expenditures confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local advertising group or pool seek the enforcement of this obligation.

Franchisee agrees that no advertising shall be employed by him unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

7.3    **National Creative Advertising**.    Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

8.1    **Signs**.    Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.

9.1    **Standards and Specifications for Equipment and Inventory**.    AAMCO shall fix and determine all standards and specifications for the equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

9.2    **Original Equipment, Supplies and Inventory**.    Franchisee agrees that prior to the opening of his center he will purchase the equipment, supplies and inventory listed at Appendix A of this Agreement. Franchisee will submit to AAMCO receipted invoices from the suppliers for any of these items which AAMCO may request and shall certify to AAMCO, if requested, that the items comply with the standards and specifications of AAMCO.

If Franchisee requests to purchase equipment, supplies and inventory from AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee. If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quality, and adjust the price, after notice to Franchisee.

9.3    **Operating Inventory**.    Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO, and agrees that the use exclusively of parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications) is an essential condition of the performance of this Agreement. Franchisee agrees to purchase exclusively parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications). At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications. Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination. AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.    **(SEE ADDENDUM)**



PLEASE INITIAL

9.4    **Product Warranties**.    There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

10.1    **Warranty Program**.    Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center. Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

10.2    **Warranty Payment Rates**.    Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required. The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) working days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee. If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

**10.3   Prohibition Against Other Warranties.**   Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO.  There are no warranties express or implied made by AAMCO to the customer in connection with any product furnished by AAMCO under this Agreement other than the printed form approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO to either the customer or Franchisee.

**11.1   Accounting Forms.**   Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request.  Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.  Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO.  Franchisee agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.

**11.2   Inspection of Records.**   AAMCO's representative may enter Franchisee's center to inspect books and records and to verify the accuracy of Franchisee's reports.  Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

**11.3   Penalties.**   If it is determined that Franchisee's actual gross receipts are greater than Franchisee's reported receipts by two percent (2%) or more, then he shall pay AAMCO immediately any deficiency in franchise fees together with interest on that amount at the rate of eighteen percent (18%), or the legally permissable rate, whichever is less, per year, calculated from when such fees should have been paid.  Franchisee also agrees to reimburse AAMCO for any and all expenses connected with such inspection, including but not limited to reasonable accounting and attorneys' fees. Franchisee further acknowledges and agrees that failure to account for all his center's gross receipts gives AAMCO the right to assess Franchisee a penalty of 50% of any such underreported gross receipts.

**11.4   Financial Statements.**   Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year.  In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period.  All statements required by this paragraph may be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles.  All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee.

**12.1   Insurance.**   Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability, garage keeper's direct primary coverage and workers' compensation insurance, including coverage for AAMCO as an additional named insured.  In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined.  Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid.  Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO.  Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

**12.2   Indemnity Agreement.**   Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center.  This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents.  The minimum amounts of insurance outlined in paragraph 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

**12.3   Independent Contractor.**   Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever.  Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever. Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO.  Franchisee specifically agrees that he shall not do so.

**13.1   Security Deposit.**   Franchisee acknowledges that he has deposited with AAMCO the sum of $3,000 as security for compliance with all the provisions of this Agreement.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement.  AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.  It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address.  Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $3,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $3,000.

AAMCO agrees to pay simple interest on this deposit at the rate of 6% per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

**14.1   Defaults in Payment.**   Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued. Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissable rate, whichever is less, from thirty (30) days after the due date until payment. The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts. Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fee. In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor. Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.3.

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

**15.1   Assignment.**   This Agreement is a personal obligation of the undersigned Franchisee, and his rights to the use of AAMCO's service marks and trademarks are not assignable  nor transferable under any circumstances except in strict compliance with the provisions herein.

(a)   In the event of Franchisee's death, his rights shall pass to his heirs or next of kin provided that they shall immediately attend and successfully complete AAMCO's training course as provided for in this Agreement. Such persons must attend the AAMCO Operator's Training Course prior to the third class offered after the date of the death of Franchisee. Failure to do so will result in the termination of all rights conferred under this Agreement.

(b)   If Franchisee, as an individual, desires to transfer his rights under this Agreement to a corporation he may do so only upon the following terms and conditions:

(1)   Franchisee's name remains on the Agreement and the corporation is added as a co-franchisee on the Agreement.

(2)   The corporation be newly organized and its activities be confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3)   Franchisee is the owner of all the stock of the corporation, and is the principal executive officer.

(4)   All money obligations of Franchisee to AAMCO must be satisfied.

(5)   The corporation and all its officers sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement.   It is expressly understood that the assumption of Franchisee's obligation by any corporation does not limit Franchisee's personal obligations under this Agreement and Franchisee and the corporation shall be jointly and severally liable.

(6)   Franchisee agrees that this Agreement will not be transferred to a corporation, or to an individual by transfer of stock, or by any other means.

(c)   If Franchisee has organized a corporation, the capital stock shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO. There may be a sale of all of Franchisee's captial stock on the same conditions mentioned above in this section, to a purchaser as though the person acquiring such stock were the purchaser under section 15.2 of this Agreement. All stock certificates shall have endorsed upon them the following:

'The transfer of this stock is subject to the terms and conditions of a Franchise Agreement

dated   August 18,   19 92 , between AAMCO Transmissions, Inc., and

Robert V. Romano

(d)   If Franchisee is a partnership and all partners desire to transfer the franchise to a corporation, they may do so only upon the terms and conditions as set forth above, provided that the partners own all the stock of the corporation and are the principal executive officers thereof.  The right of any partner to sell, assign, pledge, mortgage or transfer his interest shall be subject to the same conditions governing the sale, assignment, pledge, mortgage or transfer of capital stock of a corporation as set forth above.

(e)   Franchisee shall mean each partner who is an AAMCO franchisee or each stockholder who is an AAMCO franchisee, and each such individual shall be subject to all of the provisions of this Agreement, jointly and severally.

(f)   If a corporation is a co-franchisee, then the corporation shall disclose to AAMCO the names and addresses of all officers and directors and shall whenever there is any change, immediately notify AAMCO of such change.

15.2   **Sale.**   If Franchisee desires to sell his rights hereunder, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below.  AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied.  The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers.  Franchisee and other person or persons having control of the affairs of a corporate franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale.  Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

(a)   If Franchisee sells his AAMCO center without the aid or assistance of AAMCO and the purchaser is approved by AAMCO, then the purchaser must sign a current form of franchise agreement.  The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee; or, of signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid by Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

(b)   If AAMCO assists Franchisee in the sale of his center and the purchaser is approved by AAMCO, then the purchaser must sign a current form of the franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

15.3   **Attempted Sale, Assignment or Transfer.**   If Franchisee attempts to sell, assign or transfer his rights under this Agreement without following the procedures required by this Agreement, then the Agreement shall terminate automatically pursuant to these provisions.  In that event, AAMCO retains all moneys of Franchisee which are being held under deposit, or otherwise, to be applied as AAMCO may elect towards liquidated damages or towards other damages which may be awarded to AAMCO as a result of termination of this Agreement.  Franchisee shall remain jointly and severally liable for all moneys owed under this Agreement despite any unauthorized sale, assignment or transfer or attempt to sell, assign or transfer Franchisee's AAMCO center.

15.4   **Notification of Resale.**   Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1   **Duration of the Franchise.**   This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years.  Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years.  Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a)   Any default set forth in section 18.1 of this Agreement not withstanding compliance with paragraph 18.1(b); or

(b)   Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO.  AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1   **No Waiver by AAMCO.**   AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

18.1   **Termination.**

(a)   AAMCO may terminate this Agreement by giving written notice of termination to Franchisee upon the occurrence of any of the following:

(1)   A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2)  If Franchisee unreasonably delays in opening his center.  In no event shall a period of less than eight (8) months be considered an unreasonable delay.  In the event that this Agreement is terminated pursuant to this subsection, then AAMCO may elect to retain as liquidated damages the deposit paid by Franchisee pursuant to section 3.1.

(3)  If Franchisee terminates or attempts to terminate this Agreement for any reason.  If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4)  In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5)  Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6)  Failure to make any payments to AAMCO required under any provision of this Agreement.

(7)  If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8)  If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9)  If Franchisee shall commit a violation of any provision of this Agreement.

(b)  Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement.  For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default.  Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement.  It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c)  Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

19.1  **Procedures after Termination.**

(a)  Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1)  Promptly pay AAMCO all sums due and owing.

(2)  Promptly pay AAMCO the sum of $5,000 to be held by AAMCO to cover the costs of warranty work for customers of Franchisee's former center.  If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3)  Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4)  Promptly surrender to AAMCO all signs, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5)  Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6)  Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7)  At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(b)  Upon termination or Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein.  If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement.  The full purchase price of the center shall be:

(1)  In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

AT-89-7 (2)

(8)

(2)   In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center. AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine. In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c)   If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal. In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d)   If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so. In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

(e)   The termination or Expiration of this Agreement shall not affect, modify or discharge any claim, rights, or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination or Expiration.

19.2   **Covenant Not-To-Compete.**   Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a)   During the term of this Agreement and any renewal thereof, Franchisee shall not directly or indirectly engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b)   For a period of two (2) years after the termination or Expiration of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c)   Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO. Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled. If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d)   Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1   **Applicable Laws.**   Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

20.2   **Federal Trade Commission Orders.**   Franchisee acknowledges receipt of copies of FTC Orders No. 8816 and C-2305 and Franchisee agrees to adhere to the provisions of these Orders in his dealings with the public and with AAMCO.

21.1   **Jurisdiction.**   This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania and shall be interpreted according to the laws of Pennsylvania. Franchisee hereby agrees that mailing to his last known address by certified or registered mail of any process shall constitute lawful and valid process. Franchisee further agrees to the jurisdiction and venue of any proper court of general jurisdiction in either Philadelphia County, Pennsylvania, Montgomery County, Pennsylvania or in the county in which AAMCO has its principal place of business. Franchisee more particularly agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania with respect to any proceedings which arise out of or are connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

AT-S9-7 (2)                                                                 (9)

**21.2   Jury Trial Waived.**   Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

**21.3   Severability.**   In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision has never been a part of it.

**21.4   Notice.**   Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested to the other party at the addresses set forth below, unless notice is given of a change of address. However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

**21.5   Recovery of Costs and Attorneys' Fees.**   In any court or arbitration proceeding brought by either party hereto, arising out of or based upon this Agreement, all court costs, attorneys' fees and other expenses related to any claim on which a party prevails shall be paid to that party by the non-prevailing party.

**22.1   Mediation and Arbitration.**

(a)   Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b)   All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO.  Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

**23.1   Entire Agreement.**   This Agreement consisting of ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties.  Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                                                          AAMCO TRANSMISSIONS, INC.

_____                 By: _____

_____                 _____
WITNESS                                                         FRANCHISEE   Robert V. Romano          (SEAL)

_____                 _____
WITNESS                                                         FRANCHISEE                                     (SEAL)

Address for AAMCO Transmissions, Inc.           Address for Franchisee:
One Presidential Boulevard
Bala Cynwyd, PA  19004

ADDENDUM TO FRANCHISE AGREEMENT

Section 6.1 of the Franchise Agreement is hereby amended to include the following provision:

In the event that Franchisee does not commence operation of his AAMCO Center within six (6) months of successful completion of the Operator's Training Course, Franchisee will attend a one-week training course during the month immediately preceding the opening of his AAMCO center. Expenses of travel and lodging for the one-week training course will be borne by AAMCO.

IN WITNESS WHEREOF, the parties have executed this addendum as set forth below:

Date  August 18, 1992

Attest:                                          AAMCO Transmissions, Inc.

_____                          By: _____

_____                          _____
Witness                                          Franchisee  Robert V. Romano

## ADDENDUM TO FRANCHISE AGREEMENT

Section 9.3 of the Franchise Agreement is hereby amended to include the following provision:

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center. Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications. Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training. AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the __18th__ of ____August_____, 199_2___.

Attest:                                AAMCO TRANSMISSIONS, INC.

_____        By:_____

_____           _____
Witness                                FRANCHISEE    Robert V. Romano

_____        _____
Witness                                FRANCHISEE

TO:     AAMCO Transmissions, Inc.
          One Presidential Boulevard
          Bala Cynwyd, PA  19004

     I hereby subscribe to the AAMCO Tech Video Library.  I agree to purchase all tapes in the current library at a cost of $_____N/A_____, payable at the rate of $_____N/A_____ per month for ____N/A____ months.  Furthermore, I agree to purchase new tapes as they are made available and to pay for them at $_35.00_____ per tape/~~per month~~.  I also agree to continue this subscription for the duration of my franchise unless I decide to participate in a comparable technical training program which meets AAMCO's specifications, at which time this subscription shall be ended.

                            *Robert Romano*
       Franchisee   Robert V. Romano

Dated:_August 18, 1992_____

AAMCO Transmissions, Inc.
One Presidential Boulevard
Bala Cynwyd PA  19004

Gentlemen:

This is to acknowledge and confirm that paragraphs 4.2, 4.3 and 11.1 of the Franchise Agreement have been brought to my attention.

I understand and hereby reiterate my agreement to pay AAMCO the requisite franchise fee on the gross receipts from business generated at my center, including, work on standard and automatic transmissions, foreign and domestic cars, receipts from wholesale, fleet, commercial, retail and referral business, and receipts from sales of parts, supplies and accessories.

I further acknowledge and reiterate my agreement to use only AAMCO repair orders and to report accurately and promptly the gross receipts from my center.

Very truly yours,


Franchisee   Robert V. Romano

Date   August 18, 1992


Witness

Miami/Ft. Lauderdale FL AAMCO Dealers Advertising Pool
---------------------------
c/o AAMCO Transmissions, Inc.
One Presidential Boulevard
Bala Cynwyd, Pennsylvania  19004

Gentlemen:
Please accept this letter as evidence of my commitment to the
requirement that I, as an AAMCO franchisee, participate in and cooperate
with my local advertising pool and program.

A.   I acknowledge that advertising is necessary to the successful
     operation of my business as an AAMCO dealer.

B.   I acknowledge that advertising by other AAMCO dealers within my
     marketing area directly benefits my AAMCO center.

C.   I acknowledge the legal, business and other responsibilities to
     approve, cooperate and participate in the advertising program
     established by the other AAMCO dealers in my marketing area, as
     such programs are approved by AAMCO Transmissions, Inc.

D.   I agree that should I be in default of any money due my local
     AAMCO Dealers Advertising Pool, or should I fail to participate
     in an advertising program and make payment for it, I shall be
     subject to a delinquency charge and pay interest at the highest
     contract rate permitted by law to be computed in addition to my
     actual billing, plus any legal and attorney's fees incurred in
     the event suit must be commenced against me because of a
     violation of this Agreement.

E.   I agree that I will submit any and all information required to
     administer the local AAMCO dealers advertising program in my
     area and will submit such information to the group authorized
     to administer the local advertising program.

F.   It is further agreed and understood by and between me and the
     _Miami/Ft._Lauderdale_FL_____AAMCO Dealers Advertising Pool
     that I contract for a period equal to the duration of my
     Franchise Agreement with AAMCO and any renewals thereof, to
     participate in and to be responsible for the payment of
     advertising on this local level as determined by my advertising
     pool.  I acknowledge that the benefit that I am deriving and
     will derive from participating in local advertising and my
     concurrent responsibility for payment of my share of local
     advertising shall begin at the end of the first full week after
     the actual opening of my AAMCO center.  I further agree to
     execute any agreements presently in use by said local AAMCO
     Dealers Advertising Pool.  The amount of payment for such
     advertising shall be as follows:

     1.   Existing percent or flat rate formula, if applicable $200/week
     2.   Existing minimum weekly contribution
     3.   Existing maximum weekly contribution

G.  I acknowledge that the above amount(s) may be changed by the
    local AAMCO Dealers Advertising Pool according to its standard
    procedure and I agree to be bound by any such change(s).

H.  To secure my responsibility to make the necessary payments for
    an initial period of two (2) years, I hereby agree to execute
    a Note, secured with the appropriate collateral, and including
    an acceleration clause for payment in the event of a default,
    to be paid on a monthly basis to enforce my financial responsi-
    bility under the terms of this Agreement.  The Note is to be
    drawn under the appropriate requirements of my local
    jurisdiction and is to be made in favor of my AAMCO Dealers
    Advertising Pool,  I acknowledge that the two-year period of
    the Note in no way affects my 15-year obligation under the
    Franchise Agreement in regard to all aspects of local
    advertising, including payment thereof.  If requested to do so,
    I further agree to execute additional Notes payable to my local
    AAMCO Dealers Advertising Pool to secure the remaining years of
    my local advertising obligation.

I.  I further agree to continue to participate in the local AAMCO
    Dealers Advertising Pool for the duration of my Franchise
    Agreement.

Date_____ August 18, 1992          Franchisee_____
                                                            Robert V. Romano

                                                 AAMCO Dealers Advertising Pool


                                                 By:_____
                                                    AUTHORIZED REPRESENTATIVE



# AAMCO TRANSMISSIONS, INC.
# FEE SCHEDULE

It is understood by the franchisee that the Service and License Fee is the sum required to deliver to the franchisee a license to operate a transmission repair center under the AAMCO trademark. This sum does not represent the actual costs involved in the development of operational procedures, selection and training of the franchisee, market research and approval of a location, or additional costs incidental to the granting of a franchise and the establishment of an operational center.

**AAMCO SERVICE AND LICENSE FEE    $30,000.00**

**APPENDIX A**

## OFFICE AND SHOP SUPPLIES INITIAL PACKAGE

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 1 unit | Custom Printed AAMCO Automatic Transmissions Repair Orders Unit of 1,000 | 79A-XXXX | 250.00 | 250.00 |
| 1 unit | Custom Printed AAMCO Manual Transmission Repair Orders Unit of 125 | 79A-XXX | 47.00 | 47.00 |
| 2 | Repair Order Racks | 81A-0006DS | 46.59 | 93.18 |
| 1 unit | Custom Printed AAMCO Business Cards, Unit of 1,000 | 79A-0002DS | 25.95 | 25.95 |
| 1 unit | Custom Printed AAMCO Letterhead Stationery, Unit of 1,000 | 79A-0003DS | 59.35 | 59.35 |
| 1 unit | Custom Printed AAMCO Business Envelopes, Unit of 1,000 | 79A-0004DS | 51.75 | 51.75 |
| 1 unit | Business Report Envelopes – (unit of 50) | 80A-0042 | N.C. | N.C. |
| 1 pad | Weekly Summary Report Pad of 50 | 80A-0416 | N.C. | N.C. |
| 1 pad | Daily Business Report Pad of 50 | 80A-0418 | N.C. | N.C. |
| 200 | Inventory Boxes 2" x 12" x 4" | 81A-0019 | .30 | 60.00 |
| 100 | Inventory Boxes 4" x 12" x 4" | 81A-0020 | .27 | 27.00 |
| 50 | Inventory Boxes 8" x 12" x 4" | 81A-0021 | .41 | 20.50 |
| 4 | 4' x 4' Framed Peg Board, White | 81A-0022 | 8.98 | 35.92 |
| 120 | Hook, Small, Peg Board | 81A-0023 | .21 | 25.20 |
| 80 | Hook, Large, Peg Board | 81A-0024 | .25 | 20.00 |
| 1 | Work Flow System | 80A-0513 | 89.95 | 89.95 |
| 1 | AAMCO Parts Catalogue | 80A-0705 | N.C. | N.C. |
| 2 | Card File Boxes 5" x 8" x 8" | 81A-0007 | 4.50 | 9.00 |
| 2 | Dividers, Alpha A to Z – 1 set | 81A-0009 | 5.55 | 11.10 |
| 2 | Clip Board 9" x 15" | 81A-0017 | 3.40 | 6.80 |
| 1 | Bulletin Board 36" x 48" | 81A-0018 | 53.75 | 53.75 |

TOTAL: $886.45

## SALES AND PROMOTIONAL MATERIAL

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 5 | Small Dress Logo, Cloth | 73A-1229 | .75 | 3.75 |
| 50 | Bumper Stickers | 73A-1231 | .23 | 11.50 |
| 1 | Tag, Transmission, Unit of 50 | 80A-0009 | .05 | 2.50 |
| 1 | Floor Mats, Kraft, Unit of 250 | 80A-0300 | .05 | 12.50 |
| 100 | Lifetime Warranty Cards | 80A-0540 | N.C. | N.C. |
| 100 | Banner Warranty Cards | 80A-0541 | N.C. | N.C. |
| 50 | Minor Service Warranty Cards | 80A-0543 | N.C. | N.C. |
| 2 pkg. | Manual Transmission Warranties Unit of 100 | 80A-545 | N.C. | N.C. |
| 1 pkg. | Manual Transmission Worksheet Unit of 50 | 80A-0407 | 1.99 | 1.99 |
| 2 pkg. | Clutch Warranty - Unit of 100 | 80A-542 | N.C. | N.C. |
| 100 | Warranty Booklet | 80A-0585 | .32 | 32.00 |
| 100 | Warranty Envelope | 80A-0021 | .04 | 4.00 |
| 2 | Service Recommendation Book | 80A-0693 | 10.00 | 20.00 |
| 1 | AAMCO Parts & Labor Guide | 80A-0561 | 29.95 | 29.95 |
| 1 | Auto Trans. Suggested Price List | 80A-0598 | N.C | N.C |
| 5 | Telephone Procedure Pads | 80A-0536 | 2.00 | 10.00 |
| 2 | Poster Quotation Sheet | 80A-0093 | 3.75 | 7.50 |
| 1 | Auto Policy Sign | 80A-579 | N.C. | N.C. |
| 1 | Standard Policy Sign | 80A-592 | N.C. | N.C. |
| 1 | MCA Daily Customer Register | 80A-0670 | 2.50 | 2.50 |
| 50 | Customer Service Booklet, Manual | 80A-0547 | .31 | 15.50 |
| 1 | Roll of 1000 Service Stickers | 73A-0522 | 23.00 | 23.00 |
| 1 | Outside Sales Package | 80A-0713 | 98.75 | 98.75 |
| 100 | Outside Sales Window Decals | 80A-0004 | .52 | 52.00 |
| 1 | Pkg. of 7 Posters | 73A-0532 | 49.50 | 49.50 |
| 7 | Poster Frames | 80A-0731 | 9.95 | 69.95 |

TOTAL   $446.89

TECHNICAL MATERIAL

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 1 | AAMCO Technical Hotline Tech Call Reprints | 80A-0535 | 56.45 | 56.45 |
| 1 | AAMCO Technical Advisory Bulletin Package | 80A-0170 | 45.00 | 45.00 |
| 1 | Chrysler Electronic Lock-Up | 80A-0485 | 7.00 | 7.00 |
| 1 | THM 125/125C Automatic Transaxle Package | 80A-0697 | 56.45 | 56.45 |
| 1 | THM 200C Transmission Package | 80A-0698 | 30.00 | 30.00 |
| 1 | THM 325-4L Automatic Transmission Package | 80A-0699 | 40.00 | 40.00 |
| 1 | THM 400 Automatic Transmission Package | 80A-0700 | 35.00 | 35.00 |
| 1 | THM 440-T4 Automatic Transmission Package | 80A-0701 | 60.00 | 60.00 |
| 1 | THM 700-R4 Automatic Transmission Package | 80A-0702 | 52.00 | 52.00 |
| 1 | A340E, A340H Automatic Transmission Repair Manual (Jan. 1985) | 80A-0703 | 9.50 | 9.50 |
| 1 | A131, 131L, 132, 132L, A140, 140E, A240L, A241L Repair Manual (Oct. 1985) | 80A-0704 | 10.75 | 10.75 |
| 1 | Technical Video Training Series As of March 1, 1992 (18) programs Complete, which includes 43 tapes | set | 35.00/tape | 1,505.00 |

TOTAL:   $1,907.15

| | | | | |
|---|---|---|---|---|
| 1 | * Chilton Automatic Transmission Manual (1980-84) | | | |
| 1 | * Chilton Import Wiring Diagrams (1978-83) | | | |
| 1 | * Chilton Import Wiring Diagrams (1984-86) | | | |
| 1 | * Chilton Import Wiring Diagrams (1987-88) | | | |
| 1 | * Chilton Domestic Wiring Diagrams (1982-84) | | | |
| 1 | * Chilton Domestic Wiring Diagram Supplement (1985) | | | |

<u>TECHNICAL MATERIAL   (CONTINUED)</u>

| <u>QUANTITY</u> | <u>DESCRIPTION</u> | <u>PART #</u> | <u>EACH</u> | <u>TOTAL</u> |
|---|---|---|---|---|
| 1 | * Chilton Domestic Wiring Diagram Supplement (1986) | | | |
| 1 | * Chilton Domestic Wiring Diagram Supplement (1987) | | | |
| 1 | * Chilton Domestic Wiring Diagram Supplement (1988) | | | |
| 1 | * Mitchell Transmission Parts and Labor Estimating Guide (Current Year) | | | |
| 1 | * Motor Domestic Transmission Manual – 1st Edition | | | |
| 1 | * Motor Import Transmission Manual – 3rd Edition | | | |
| 1 | * Mitchell Manuals Yearly Import and Domestic Transmission (Update Manual) | | | |
| 1 | * Mitchell Electronic Component Locator Manual | | | |
| 1 | * Mitchell Tune-up and Emissions Control Manual | | | |
| 1 | * Mitchell Electrical Systems Manual | | | |
| 1 | * Mitchell Engine Performance (Cars) | | | |
| 1 | * Mitchell Engine Performance (Light Truck & Van) | | | |
| 1 | * Mitchell Engine Performance (Import Car Truck & Van) | | | |

Electrical

| | | | | |
|---|---|---|---|---|
| 1 | * Mitchell Car (Domestic) | | | |
| 1 | * Mitchell Light Truck & Van (Domestic) | | | |
| 1 | * Mitchell Truck, Car & Van (Import) | | | |

Chassis

| | | | | |
|---|---|---|---|---|
| 1 | * Mitchell Car (Domestic) | | | |
| 1 | * Mitchell Light Truck (Domestic) | | | |
| 1 | * Mitchell Light Truck, Car & Van (Import) | | | |

* TO BE SOURCED BY LOCAL VENDOR

## SHOP EQUIPMENT AND TOOLS

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 1 | Transmission Pressure Gauge Set | 22A-0002 | 48.10 | 48.10 |
| 2 | Rebuilding Facilities | T-0177-A08 | 427.22 | 854.44 |
| 1 | Wall Clock | 76A-0032DS | 126.50 | 126.50 |
| 1 | Hanging Hex Sign with Chain | 76A-0077DS | 225.00 | 225.00 |
| 4 | High Axle Stands | 76A-0005DS | 140.70 | 562.80 |
| 1 | Radiator Fill Bucket | 76A-0012DS | 21.00 | 21.00 |
| 2 | Trans. Drain Can - 5 Gallon | 76A-0013DS | 67.00 | 134.00 |
| 1 | Air Compressor 5 h.p. with Starter | 76A-0271DS | 1,508.84 | 1,508.84 |
| 1 | Shop Stool | 76A-0018DS | 50.20 | 50.20 |
| 1 | Shop Desk | 76A-0020DS | 195.00 | 195.00 |
| 1 | Bench Vise | 76A-0029DS | 95.00 | 95.00 |
| 1 | Bench Grinder | 76A-0030DS | 171.91 | 171.91 |
| 1 | Floor Jack - 2 ton | 76A-0033DS | 340.71 | 340.70 |
| 1 | Clutch Spring Compressor | T-0171 | 203.64 | 203.64 |
| 1 | Battery Charger | 76A-0046DS | 326.52 | 326.52 |
| 6 | Drop Lights with Guard | 76A-0047DS | 20.10 | 120.60 |
| 2 | Transmission Jacks | 76A-0097 | 960.00 | 1,920.00 |
| 1 | Transmission Holding Fixture | T-0156-A | 104.49 | 104.49 |
| 1 | Transmission Holding Fixture | T-0156-B | 111.22 | 111.22 |
| 1 | Torque Converter Flusher | 76A-0256DS | 1,995.00 | 1,995.00 |
| 1 | Cooler Line Flusher | 76A-0257DS | 515.23 | 515.23 |
| 6 | Above Ground Lifts (Installation not included) | | 3,459.00 up | 20,754.00 |
| 1 | Cleaning Machine (several options) | T-0100 | 3,200.00 | 3,200.00 |
| 1 | Lo/Rev Clutch Tool GM | T-1059 | 40.69 | 40.69 |
| 1 | GM Engine Support Pkg. | T-1256-A | 206.55 | 206.55 |
| | 1 1/2" Ext. Hsg. Bushing Tool | 22A-0476DS | 86.25 | 86.25 |
| | Fluid Drain Funnel | T-0169 | 17.96 | 17.96 |

## SHOP EQUIPMENT AND TOOLS   (CONTINUED)

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 6 | Shop Air Hoses 25 ft. | 76A-0067 | 32.21 | 193.26 |
| 1 | Ratchet and Hoist (come along) | 76A-0068DS | 40.67 | 40.67 |
| 1 | Radiator Drain Pan | 76A-0070 | 16.10 | 16.10 |
| 12 | Coupling - Air Hose | 76A-0094 | 8.11 | 97.32 |
| 12 | Nipple - Air Hose | 76A-0095 | 1.70 | 20.40 |
| 5 | Parts Cleaning Brush | 76A-0098DS | 4.61 | 23.05 |
| 1 | Safety Goggles (OSHA) | 76A-0100DS | 7.65 | 7.65 |
| 1 | Bushing Driver Set | T-220-39 | 280.69 | 280.69 |
| 1 | Jack Adaptor Pkg. | 76A-0175DS | 156.78 | 156.78 |
| 1 | Oxy-Acetyline Torch Set | 76A-0223DS | 362.75 | 362.75 |
| 1 | Axle Puller | 76A-0225DS | 62.46 | 62.46 |
| 1 | Universal Seal Installer Kit | T-0217 | 86.12 | 86.12 |
| 1 | Hand Vacuum Pump | 22A-0500 | 37.75 | 37.75 |
| 1 | 0 - 100# Pressure Gauge | T-0163-C | 37.60 | 37.60 |
| 1 | 0 - 300# Pressure Gauge | T-0163-D | 38.65 | 38.65 |
| 1 | Pressure Gauge Adaptor Set | 22A-522 | 49.95 | 49.95 |
| 1 | OTC Monitor 4000 | T-3313 | 845.00 | 845.00 |
| 1 | OTC Import Starter | 3305-43 | 405.00 | 405.00 |
| 1 | Quik-Test Box | 22A 0531 | 295.00 | 295.00 |
| 1 | Harness Kit (3 pcs.) | 22A 0543 | 172.00 | 172.00 |
| 1 | Pump to Gear Alignment Tool (C3/A4LD) | T-0168 | 13.00 | 13.00 |
| 1 | Bell Housing to Pump Alignment Tool (C3/A4LD) | T-0168-A | 46.15 | 46.15 |
| 1 | Overrun Clutch Guide (C3/A4LD) | T-0409 | 28.98 | 28.98 |
| 1 | Reverse Band Servo Rod Selecting (C3/A4LD) | T-0412 | 31.89 | 31.89 |
| 1 | Lip Seal Installer Protector Kit (C3/A4LD) | T-0424 | 32.78 | 32.78 |
| 1 | Valve Body Test Plate   (C3/A4LD) | T-2617 | 42.32 | 42.32 |

## SHOP EQUIPMENT AND TOOLS   (CONTINUED)

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|:---:|---|---|---:|---:|
| 1 | Cooler & Fuel Line Disconnect Tool (C4/C5) | T-1890 | 13.49 | 13.49 |
| 1 | Shaft Linkage Remover & Installer Tool (C4/C5) | T-0455 | 43.73 | 43.73 |
| 1 | Air Test Plate (AOD) | T-1617 | 74.10 | 74.10 |
| 1 | Lip Seal Installer Protector Kit (AOD) | T-1600-K | 61.05 | 61.05 |
| 1 | Servo Piston Remover   (AOD) | T-1632 | 14.00 | 14.00 |
| 1 | Servo Piston Remover    (AOD) | T-1633 | 47.61 | 47.61 |
| 1 | Reverse Clutch Piston Seal Installer Protector (ATX) | T-1824 | 24.67 | 24.67 |
| 1 | Lip Seal Protector Kit (AXOD) | T-2400 | 33.49 | 33.49 |
| 1 | Front Clutch Loading Tool (AXOD) | T-2402 | 31.73 | 31.73 |
| 1 | Valve & Pump Body Guide Pins (AXOD) | T-2407 | 32.52 | 32.52 |
| 1 | Test Plate (AXOD) | T-2417 | 55.69 | 55.69 |
| 1 | Lip Seal Installer Protector Kit (AXOD) | T-1030 | 27.02 | 27.02 |
| 1 | Output & Transfer Gear Holder Remover & Installer (404/413/470) | T-1454 | 29.61 | 29.61 |
| 1 | Output & Transfer Gear Holder Remover & Installer (404/413/470) | T-1460 | 96.40 | 96.40 |
| 1 | Automatic Transmission Clutch Spring Compressor | T-0158 | 158.83 | 158.83 |
| 1 | Adjustable Spring Foot Compressor | T-0171-J | 52.45 | 52.45 |
| 1 | 5/16" Slide Hammer Adaptors | T-0154-A | 21.03 | 21.03 |
| 1 | 10mm Slide Hammer Adaptors | T-0154-B | 21.03 | 21.03 |
| 1 | 12mm Slide Hammer Adaptors | T-0154-C | 17.47 | 17.47 |
| 1 | Fluid Evacuator Kit | T-0012 | 466.72 | 466.72 |
| 1 | 3/4" Slide Hammer Adaptors | T-0154-D | 32.31 | 32.31 |
| 1 | 1/2" Slide Hammer Adaptors | T-0154-E | 18.27 | 18.27 |
| 1 | 7/16" Slide Hammer Adaptors | T-0154-F | 19.52 | 19.52 |
| 1 | Large Transmission Service Pan | T-0167 | 31.77 | 31.77 |
| 1 | HD 6 Gal. Galvanized Drain Pan | T-0167-B | 28.07 | 28.07 |

## SHOP EQUIPMENT AND TOOLS   (CONTINUED)

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 1 | Rebuilders Small Parts Tray | T-0170 | 17.96 | 17.96 |
| 1 | Valve Body Parts Tray | T-0170-A | 17.96 | 17.96 |
| 1 | High Axle Stand | T-0180 | 138.50 | 138.50 |
| 1 | 6 Ton Adjustable Stands | T-0181-A | 115.56 | 115.56 |
| 1 | Tube Bender | T-1228 | 12.66 | 12.66 |
| 1 | Universal Pump Puller | T-0033 | 83.63 | 83.63 |
| 1 | Universal Seal Puller | T-0034 | 9.14 | 9.14 |
| 1 | Clutch Alignment Tool Kits: 26 Pc. Asian Set | T-2502 | 58.78 | 58.78 |
| 1 | 25 Pc. European Set | T-2503 | 58.78 | 58.78 |
| 1 | 27 Pc. Domestic Set | T-2504 | 58.78 | 58.78 |
| 1 | C-Ring Remover and Installer Output Shaft (125/125C) | T-1201 | 37.01 | 37.01 |
| 1 | Clutch Assembly & Final Drive Remover and Installer (125/125C) | T-1202-A | 84.69 | 84.69 |
| 1 | Intermediate Band Apply Pin Gauge (125/125C) | T-1261 | 137.66 | 137.66 |
| 1 | Convertor Seal Installer (125/125C) | T-1263 | 15.23 | 15.23 |
| 1 | Turbine Shaft Seal Installer (125/125C) | T-1274 | 25.14 | 25.14 |
| 1 | Extension Housing Bushing Remover and Installer (180/180C) | T-0160 | 54.75 | 54.75 |
| 1 | Shift Lever Seal Remover and Installer (180/180C) | T-1001 | 21.33 | 21.33 |
| 1 | Convertor Housing to Front Pump Alignment Tool (180/180C) Early | T-1080 | 41.25 | 41.25 |
| 1 | Convertor Housing to Front Pump Alignment Tool (180/180C) Late | T-1080-A | 41.25 | 41.25 |
| 1 | Third Clutch Ring Compressor (Thru early '79 180/180C) | T-1085 | 37.02 | 37.02 |
| 1 | Third Clutch Ring Compressor (late '79 & up 180/180C) | T-1085-A | 93.20 | 93.20 |
| 1 | Extention Housing Bushing Remover & Installer (200/C/4R) | T-0160 | 54.75 | 54.75 |

## SHOP EQUIPMENT AND TOOLS   (CONTINUED)

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 1 | Oil Pump Remover and End Play Gauge (200/C/4R) | T-1055 | 31.24 | 31.24 |
| 1 | Cup Ring Installer (200/C/4R) | T-1112 | 21.33 | 21.33 |
| 1 | 4th Cl. Compressor & Center Support Remover and Installer (2004R only) | T-1705 | 84.69 | 84.69 |
| 1 | Overrun Clutch Inner Piston Seal Protector (2004R only) | T-1727 | 15.73 | 15.73 |
| 1 | Rear Clutch Spring Compressor (250/350/350C) | T-0151 | 19.29 | 19.29 |
| 1 | Slide Hammers Heavy Duty | T-0154-HD | 51.01 | 51.01 |
| 1 | Front Pump End Play Gauge (375/400) | T-104B | 48.48 | 48.48 |
| 1 | Trans-Axle Output Shaft & Alignment Tool (440T4) | T-1203 | 130.22 | 130.22 |
| 1 | Trans-Axle Loading Tool Adapter Plug  (440T4) | T-1204 | 10.07 | 10.07 |
| 1 | Turbine Shaft Seal Installer (cover side 440T4) | T-1274 | 25.14 | 25.14 |
| 1 | Turbine Shaft Seal Installer (Case side 440T4) | T-1274-A | 25.14 | 25.14 |
| 1 | Input Shaft Seal Installation Set (440T4) | T-2004 | 53.76 | 53.76 |
| 1 | Input Clutch Piston Seal Protector (440T4) | T-2027 | 14.24 | 14.24 |
| 1 | 3rd Clutch Piston Seal Protector (44OT4) | T-2028 | 12.89 | 12.89 |
| 1 | 1-2 & Reverse Bands Apply Pin Gauge  (440T4) | T-2061 | 167.18 | 167.18 |
| 1 | Lip Seal Installer Protector Kit (375/400/425) | T-0124 | 31.25 | 31.25 |
| 1 | Overrun Clutch Inner Seal Protector & Installer (700R4) | T-1527 | 13.13 | 13.13 |
| 1 | Forward Clutch Inner Seal Protector & Installer (700R4) | T-1528 | 13.21 | 13.21 |
| 1 | Output Shaft Support Fixture (700R4) | T-1560 | 42.34 | 42.34 |
| 1 | Intermediate Band Apply Pin Gauge (700R4) | T-1561 | 165.15 | 165.15 |

### SHOP EQUIPMENT AND TOOLS   (CONTINUED)

| QUANTITY | DESCRIPTION | PART # | EACH | TOTAL |
|---|---|---|---|---|
| 1 | Turbine Shaft Seal Installer (700R4) | T-1574 | 58.19 | 58.19 |
| * | Solvent Tank for Valve Bodies - Safety Kleen | | | |

TOTAL:   $40,531.80

* To be sourced by local vendor

NOTE:    The equipment contained in this package represents an initial start-up inventory for your AAMCO Center. Certain additional tools and equipment are necessary. These additional items for the most part fall into the category of specialized small hand tools and as such may be part of your technician's tool supply. Accordingly, you may not have to acquire them as shop supplies.  Upon request, your AAMCO Parts Department will help you identify and source these items as needed.

Recommended initial AAMCO Parts Order is available on request.   Prior to the application of any qualifying quantity discounts, total order value is $9,983.00.

Recommended initial Torque Converter Inventory is 50 units at approximately $50.00 per unit.   Total inventory value is $2,500.00.

The items listed above are available from AAMCO at the prices listed, but may be purchased from any approved supplier.

Applicable state, provincial, local taxes and duty incidental to the sale of the above listed items will be paid by the franchisee.

Prices quoted are subject to change.  Prices in effect at the time the order is placed will be charged at the time the order is delivered and any freight charges.

## ESTIMATED MINIMUM CAPITAL REQUIREMENTS

| | |
|---|---:|
| Lease Deposit | $ 6,000.00 |
| Utility Deposit | 1,000.00 |
| Security Deposit | 3,000.00 |
| Month's Rent | 3,000.00 |
| Equipment Installation | 3,800.00 |
| Oil and Solvent | 525.00 |
| Sign Painting | 525.00 |
| Recruitment and Pre-Open Personnel | 1,700.00 |
| Working Capital | 15,000.00 |
| Sign Installation | 2,250.00 |
| Furniture and Fixtures | 1,800.00* |

TOTAL:   $38,600.00

* Plus Freight

The amounts listed for the above items are only estimates and,
as such, are subject to variations based on local conditions.

| | |
|---|---:|
| AAMCO SERVICE AND LICENSE FEE | $ 30,000.00 |

| | |
|---|---:|
| Office and Shop Supplies Initial Package | 886.45 |
| Sales and Promotional Material | 446.89 |
| Technical Material | 1,907.15 |
| Initial Parts Order | 9,983.50 |
| Initial Torque Converter Inventory | 2,500.00 |
| Shop Equipment and Tools | 40,531.80 |

| | |
|---|---:|
| ORIGINAL EQUIPMENT, INVENTORY AND SUPPLIES | $ 56,255.79 |
| ESTIMATED MINIMUM CAPITAL REQUIREMENTS | $ 38,600.00 |

GRAND TOTAL:   $124,855.79

Additional expenses may be incurred, if any site
improvements or center renovations are necessary.

Periodically, it is necessary to update Appendix A to
provide for additional items of equipment, inventory and
supplies.   The franchisee is required to have in his
possession, prior to the opening of his center, such items
which may have been added to Appendix A subsequent to
signing the Franchise Agreement.

# EXHIBIT B

## TERMINATION OF FRANCHISE AGREEMENT

WHEREAS, a Franchise Agreement was entered into between Robert V. Romano ("Franchisee") and AAMCO Transmissions, Inc. ("Franchisor"), dated August 18, 1992, for the operation of an AAMCO Transmissions center located at 1631 N. State Road 7, Hollywood, FL 33021 ("Franchise Agreement"); and

WHEREAS, it is the desire of the Franchisor and Franchisee that the Franchise Agreement be ended and terminated.

NOW, THEREFORE, for and in consideration of the mutual agreements contained herein, and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, Franchisee hereby releases all rights she/he may have under the Franchise Agreement and is hereby released by Franchisor from all personal obligations she/he may have under the Franchise Agreement, except for those obligations set forth in Sections 12.2, 18.1, 19.1, & 19.2, and the Franchise Agreement is hereby terminated.

IN WITNESS WHEREOF, intending to be legally bound hereby, the parties hereto have set their hands and seals this _20_ day of February, 2013.

ATTEST:

AAMCO TRANSMISSIONS, INC.

By:

_____

~~Marc Graham – President~~ Bret H. Bero – Interim President

Assistant Secretary

_____

_Robert V Romano_

Witness

Franchisee – Robert V. Romano

_____

Witness

Franchisee –

# EXHIBIT C



Treasure Coast Transmissions

Xtand Transmission Rebuilt Transmission Shop

Bob Romano
Owner

2801 SE Monroe Street
Stuart, Florida 34997

Tele 772-200-2995  Fax 772-266-4428
tctrans1@gmail.com
www.treasurecoasttransmissions.com

# EXHIBIT D



Stuart, FL - 10 Mile Radius