**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  13-cv-5747 |
| ROBERT V. ROMANO | : | |
| | : | |
| and | : | |
| | : | |
| LINDA ROMANO | : | |
| | : | |
| Defendants. | : | |

**OPPOSITION TO THE DEFENDANTS'
MOTIONS TO DISMISS**

**Introduction**

This case arises from a former AAMCO franchisee's operation of a competing

automotive repair center in close proximity to another AAMCO franchisee's business.  This

conduct is a direct violation of the franchise agreement between the defendant Robert Romano

and the plaintiff AAMCO Transmissions, Inc. ("ATI"), the franchisor of the AAMCO system of

transmission and auto repair centers.  The defendants have filed two motions to dismiss ATI's

Complaint, both of which ignore the terms of the franchise agreement and applicable law.

Neither motion has merit.

In Defendants' Motion To Dismiss For Improper Venue (Dkt. No. 7, "Venue Motion"),

the defendants challenge the jurisdiction or venue of the Court; the precise basis for the motion is

unclear.  Whatever the basis, however, their motion ignores the forum selection clause contained

in the franchise agreement, in which Mr. Romano specifically agreed to jurisdiction and venue in

this Court.  Mr. Romano's wife, Linda, is also a defendant in this case, because the Romanos

have taken the position that she, not Mr. Romano owns the competing center – a position that is

legally irrelevant under the agreement.  But under well-settled law, Mrs. Romano's alleged involvement in the breach of the covenant subjects her to the forum selection clause because of her close connection both to her husband and to the wrongdoing alleged in the Complaint.

In Defendants' Motion To Dismiss (Dkt. No. 8, "12(b)(6) Motion"), the defendants seek to dismiss the Complaint for failure to state a claim, arguing principally that the covenant not to compete contained in the franchise agreement, to which Mr. Romano agreed and from which he benefitted during his 20 years as an AAMCO franchisee, is not enforceable as a matter of law. But that is simply not the case.  Courts have routinely upheld and enforced covenants not to compete in franchise agreements to protect other franchisees and to protect the system as a whole from unfair competition from former franchisees.  That the Romanos moved their business from their prior location to a different market, less than a mile and a half from a long-standing existing AAMCO franchisee, does not make the covenant *less* enforceable; to the contrary, the Romanos' conduct is exactly the kind of conduct that a reasonable and enforceable covenant is designed to prevent.

Both motions to dismiss should be denied.

## STATEMENT OF FACTS

On a 12(b)(6) motion to dismiss, the Court must accept the well pleaded facts of a Complaint (including the contents of exhibits) as true.  *Renfrew Ctrs., Inc. v. UNI/CARE Sys. Inc.*, 920 F.Supp.2d 572, 574 (E.D. Pa. 2013) (Brody, J.); Fed. R. Civ. P. 10(c).  The same is true when jurisdiction or venue is challenged, except when the movant makes a "factual" rather than a "facial" challenge.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Here, the Romanos have offered no evidence, so the allegations of the Complaint must be taken as true.  But, to the extent that the Court must consider the unsworn statements contained

in their motions as "evidence," ATI submits the Declaration of Brian O'Donnell to support jurisdiction and venue.

Since at least 1963, ATI has been engaged in the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada.  ATI is the world's largest franchisor of transmission and general automotive repair centers.  (Compl. ¶ 6).On August 18, 1992, ATI and Mr. Romano entered into a franchise agreement.  (*Id.* at ¶ 7).  A copy of the franchise agreement (the "Franchise Agreement") is attached to the Complaint as Exhibit A.  The Franchise Agreement recites that it is "deemed to have been made within the Commonwealth of Pennsylvania and shall be interpreted according to the laws of Pennsylvania."  (Compl. Exh. A § 21.1).  Romano agreed to:

> jurisdiction and venue of any proper court of general jurisdiction in either Philadelphia County, Pennsylvania, Montgomery County, Pennsylvania or in the county in which AAMCO has its principal place of business.  **Franchisee more particularly agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania** with respect to any proceedings which arise out of or are connected in any way with this Agreement or its performance and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

(*Id.*) (emphasis added).

The Franchise Agreement authorized Romano to operate a transmission and automobile repair center using ATI's name and mark "AAMCO" and using ATI's proprietary business methods, information, and systems.  (Compl. ¶¶ 7, 9-10 & Exh. A. §§ 1.1, 6.1).  The Franchise Agreement authorized Mr. Romano to use the AAMCO mark, business methods, information,

and systems, only at a specific location, 1631 North 60th Avenue, Hollywood, FL  33021. (Compl. ¶ 7 & Exh. A. § 1.2).

ATI disclosed to Romano its proprietary systems, information, and trade secrets for operating a successful automotive repair business which ATI had developed over several decades.  (Compl. ¶ 9).  In August 1992, before beginning the operation of the Center, Romano attended ATI's intensive owner training class at ATI's headquarters, then in Bala Cynwyd, PA, and was provided ATI's proprietary manuals, customer lists and software.  (*Id.* at ¶ 10).

The Franchise Agreement contained a term of 15 years.  (Compl. Exh. A. § 16.1).  The Romanos contend that the Franchise Agreement was not renewed in 2007, but that their signed renewal agreement was returned to them unsigned and voided.  (12(b)(6) Motion at 3).  The Romanos fail to explain the relevance of this contention, however.  Section 16. 1 of the Franchise Agreement provides that it will renew for an additional 15 year period "unless one party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term."  (Compl. Exh. A § 16.1).  The Romanos do not contend that either party did so; the Complaint alleges that the Franchise Agreement remained in effect until February 2013 (Compl. ¶ 11); and Romano continued operating the center using the AAMCO marks, business methods, information, and systems until February 2013.  (*Id.*).

Indeed, on February 20, 2013, Mr. Romano executed a Termination of Franchise Agreement ("Termination Agreement"), a copy of which is attached to the Complaint as Exhibit B.  (*Id.*)  In the Termination Agreement, Mr. Romano acknowledged that he had entered into the Franchise Agreement and expressed a desire to terminate it.  (Compl. Exh. B ¶¶ 1-2). Accordingly, in the Termination Agreement, ATI and Mr. Romano agreed to terminate the Franchise Agreement, and to release one another from all obligations under the Franchise

Agreement "except for those obligations set forth in Sections 12.2, 18.1, 19.1 & 19.2." (*Id.*)

Pursuant to the express terms of the Termination Agreement, Romano reaffirmed his agreement to comply with his post-term non-compete obligation at Section 19.2 of the Franchise Agreement. (Compl. ¶ 12). Section 19.2 of the Franchise Agreement, entitled "Covenant Not-to-Compete," provides in pertinent part that:

> **Covenant Not-To-Compete**.  Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:
>
> . . . .
>
> (b)  *For a period of two (2) years after the termination or Expiration of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center.* The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).
>
> (c)  Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, *the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO*.  Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled. If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

> (d)  Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

(Compl. Ex. A § 19.2) (emphases added).

Despite this agreement, at least as early as July 2013, the Romanos opened a transmission repair business at 2801 SE Monroe St., Stuart, FL 34994,[1] under the name "Treasure Coast Transmissions". (Compl. ¶ 15). The defendants' Treasure Coast Transmissions center is located less than 1.5 miles from an existing AAMCO center, at 2973 SE Federal Highway, Stuart, Florida 34994. (*Id.* at ¶ 16). A map showing the proximity of the Romanos' Treasure Coast Transmission center and the pre-existing AAMCO location is attached to the Complaint as Exhibit D. (*Id.*) The defendants' center is doing harm to the AAMCO system, as well as to the nearby AAMCO franchisee. (*Id.* at ¶¶ 20-21).

## ARGUMENT

## I.   Jurisdiction And Venue Are Proper In This Court

### A.   The Forum Selection Clause Confers Personal Jurisdiction And Venue

The basis for the defendants' Venue Motion is not entirely clear, but it appears to be in the nature of a motion to transfer under 28 U.S.C. § 1404. The defendants cite no rules or statutes, and set forth no evidentiary facts. They make vague references to the amount in

---

[1] The Complaint inadvertently identifies the address of Treasure Coast Transmissions as 1631 North 60th Ave., Hollywood, FL 33021. Exhibit C to the Complaint, Mr. Romano's business card, contains the correct address of Treasure Coast Transmissions, 2801 SE Monroe St., Stuart, FL 34994.

controversy, personal jurisdiction, venue, and convenience interchangeably.  But, the gist of their argument appears to be that this forum is not convenient for them.

The forum selection clause in the Franchise Agreement disposes of most of the Romanos' arguments.  Mr. Romano has, unquestionably, submitted to the jurisdiction and venue of this Court.

The United States Supreme Court has long held that forum selection clauses are favored and virtually always enforceable in federal courts.  In *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), the Court upheld the dismissal of a case for luck of personal jurisdiction when the case had been filed in breach of a forum selection cause contained in a cruise ticket purchased by the plaintiff.  The Court held that the forum selection clause designating Florida as the exclusive forum for litigation precluded the filing of suit in Washington, where the plaintiff resided, and required the case to be brought in Florida.  *Id.* at 591-94.

Just last month, the Supreme Court reaffirmed the enforceability of forum selection clauses, and held that absent extraordinary circumstances, forum selection clauses are dispositive of venue and motions to transfer.  In *Atlantic Marine Constr. Co., Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Court unanimously held:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id*. at 583.  The Court went on to hold that courts may not give "any weight" to private convenience factors, such as location of witnesses and expense, when there is a valid forum

selection clause.  *Id*. at 584.  The Court held that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Id*. at 582.  Accordingly, Mr. Romano's arguments about convenience may not be considered, and his agreement to jurisdiction and venue in this district must be enforced.

      B.      <u>The Forum Selection Clause Applies To Mrs. Romano</u>

The forum selection clause applies equally to Mrs. Romano.  In *Beck v. CIT Group*, No. CIV.A. 94-5513, 1995 WL 394067 (E.D. Pa. June 29, 1995), the court applied a forum selection clause in a Security Agreement to the wife of a signatory, even though she had not executed it herself.  The court analyzed prior case law and concluded that when the relationship between a signatory and non-signatory, and the circumstances giving rise to the claim, are sufficiently close, the forum selection clause should be enforced against the non-signatory.  *Id*. at *6. Similarly in *Jordan v. SEI Corp.*, No. CIV. A. 96–1616, 1996 WL 296540 (E.D. Pa. June 4, 1996), the court enforced a forum selection clause against a nonsignatory.  The court held that "forum selection clauses bind nonsignatories that are closely related to the contractual relationship or that should have foreseen governance by the clause."  *Id*. at *6.  The court concluded that under the facts of that case, the conduct of the non-signatory defendants was closely related to that of the signatories, and caused no harm distinct from that caused by the signatories.  *Id*. at *7.[2]

These principles apply squarely to this case.  Mrs. Romano is a defendant in this case only because Mr. Romano has put her forward as the alleged owner of Treasure Coast

_____

[2] In *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 149-54, 696 S.E.2d 322 343-48 (2009), the West Virginia Supreme Court applied a forum selection clause to non-signatories, and thoroughly canvassed the federal court cases analyzing the applicability of forum selection clauses to non-signatories.

Transmissions in a misguided attempt to avoid his own liability.  The Complaint alleges that she is acting as his agent.  (Compl. ¶ 8).  They both contend (albeit in unsworn statements) that she is the true owner.  (12(b)(6) Motion at 2).  In their appearances in this Court, both she and Mr. Romano list their addresses at the business location of Treasure Coast Transmissions, 2801 SE Monroe St., Stuart, FL 34994.  Mrs. Romano's liability depends on her husband's agreement, and breach of that agreement.  She has permitted herself to be used to attempt to avoid his liability for breach; she cannot be heard to complain about being subjected to the forum selection clause in that agreement.

> C.    There Is An Independent Basis For Venue In This District

Irrespective of the forum selection clause, venue is proper in this district.  Under 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."

In *Leone v. Cataldo*, 574 F. Supp. 2d 471, 483-484 (E.D. Pa. 2008) (Brody, J.), this Court analyzed section 1391(a)(2).  The Court found venue in this district to be proper in a case arising out of the sale of a restaurant in New Jersey.  The defendants visited the plaintiff's restaurant in this district to determine if the plaintiff could successfully operate a restaurant.  Some of the terms of the contract were negotiated in this district, but the contract was finalized and signed in New York.  *Id*. at 476-77, 485.  The Court held that venue in this district was proper because "a qualitative review of this suit reveals that there are several substantial acts giving rise to the claims that occurred in the Eastern District of Pennsylvania."  *Id*. at 485.

The facts of this case present even more substantial contacts with this district than in *Leone*.  The Franchise Agreement, which forms the basis of this case, was executed in this district.  (Compl. ¶ 5 & Exh. A at 1).  In the Franchise Agreement, Mr. Romano obtained the

rights to use the AAMCO name and marks, as well as the know-how that he now is using against ATI. Mr. Romano also attended a six-week training session at ATI's training center in this district. (Declaration of Brian O'Donnell ("O'Donnell Decl.") ¶ 14). It was at this training that Mr. Romano learned how to operate a transmission and auto repair center using ATI's proprietary methods, which he is now using to compete with ATI, trumpeting his 20 years of experience in the business – all as an AAMCO franchisee. (*Id*. at ¶ 24). For Romano's 20 years as an AAMCO franchisee, he paid royalties to ATI in this district, and ATI provided continued updates to its manuals and methods to Mr. Romano from this district. (*Id*. at ¶¶ 13, 15).

D.    The Court Has Subject Matter Jurisdiction

The forum selection clause cannot, of course, confer subject matter jurisdiction on this court, but the Romanos have not demonstrated that subject matter jurisdiction is lacking. They allege only that ATI has failed to allege facts to show that the amount in controversy exceeds $75,000. (Venue Motion at 2). They misstate the burden on a motion to dismiss for lack of subject matter jurisdiction. As the Third Circuit has held:

> In determining whether the amount in controversy exceeds $75,000, the Court generally accepts the plaintiff's good faith allegations. However, the case may be dismissed for failure to meet the amount in controversy requirement if it appears to a "legal certainty" that the claim is for less than the jurisdictional amount.

*Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)) (other citations omitted). The Romanos have not attempted to show that ATI's allegation that the amount in controversy exceeds $75,000 cannot be met with "legal certainty." (Compl. ¶ 4).

Furthermore, the Complaint does allege facts that show that the amount in controversy exceeds $75,000. The Complaint alleges that the Romanos' conduct has done damage to the

AAMCO brand that has existed for more than 50 years.  (Compl. ¶¶ 6, 20).  The breach of the

covenant against competition by the Romanos, which would permit them to continue operating a

transmission repair center in direct competition with another AAMCO franchisee, threatens the

viability of every AAMCO franchise; if a franchisee can take what it has learned as an AAMCO

franchisee and compete directly existing AAMCO centers, the damage to the AAMCO brand is

the loss of many millions of dollars it has invested in developing the AAMCO brand over 50

years.  (O'Donnell Decl. ¶¶ 25-26, 28).  The fact that no dollar value can be placed on the harm

to ATI does not mean that the jurisdictional amount is not met; to the contrary, it supports ATI's

claim for an injunction putting a stop to the conduct.  When a Complaint seeks injunctive relief,

> [i]t is well-settled that the amount in controversy is to be measured
> for subject matter jurisdiction purposes by the value of the right
> that the plaintiff seeks to enforce or to protect against the
> defendant's conduct or the value of the object that is the subject
> matter of the action. Accordingly, and as well illustrated by the
> cases from the four corners of the federal judiciary cited in the note
> below, when a person seeks an injunction or other form of specific
> relief, such as specific performance, it is the value to the plaintiff
> to enjoy the property business, or personal affairs that constitute
> the subject of the action free from the activity sought to be
> enjoined or the benefit of the conduct requested to be mandated
> that is the yardstick for measuring whether the amount in
> controversy requirement has been satisfied.

14AA Charles Alan Wright *et al*, Fed. Practice & Procedure § 3708 (4th Ed. April 2013).  The

value to ATI of the ability to enforce the covenant against competition in its franchise

agreements, to prevent franchisees from doing what the Romanos have done—take the knowhow

they have obtained from ATI and using it to compete against AAMCO centers—vastly exceeds

$ 75,000.  *See, e.g., Weiner v. Tootsie Roll Indus., Inc.*, 412 F. App'x 224, 227-28 (11th Cir.

2011) (non-compete not subject to fair market valuation, but goodwill exceeded $75,000).

II.     **ATI Has Stated a Claim For Breach Of The Covenant Not To Compete**

A.  Standard of Review

The Third Circuit has set forth the standards for evaluating a Rule 12(b)(6) motion for

failure to state a claim as follows:

> In order to survive motions to dismiss under Fed.R.Civ.P. 12(b)(6),
> "a complaint must contain sufficient factual matter, accepted as
> true, to 'state a claim to relief that is plausible on its face.' "
> *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d
> 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
> 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In deciding whether
> the District Court's dismissal was proper, we "accept as true the
> factual allegations in the complaint and all reasonable inferences
> that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d
> Cir.1996).

*Bush v. Rendell*, 533 F. App'x 141, 143-44 (3d Cir. 2013).  ATI's Complaint more than satisfies

this standard, and the extraneous "evidence" contained in the Romanos' 12(b)(6) Motion cannot

be considered.

B.  Romano's Involvement In The Operation Of A Competing Transmission
    Repair Shop Is A Breach Of the Covenant Not To Compete

It is beyond dispute that Mr. Romano's involvement in the Treasure Coast Transmissions

center is a breach of the express language of the non-compete provision.  In the non-compete,

Mr. Romano agreed not to "directly or indirectly engage in the transmission repair business" for

a period of two years after termination of the Franchise Agreement within a radius of ten miles

from any AAMCO center.  (Compl. Exh. A § 19.2(b)).  The Complaint alleges that the Treasure

Coast Transmissions center operates less than 1.5 miles from an existing AAMCO center, well

within the ten mile radius to which Mr. Romano agreed.  (Compl. ¶ 16).  The Treasure Coast

Transmissions center opened less than five months after the execution of the Termination

Agreement, well within the two year post-termination period to which Romano agreed.  (*Id.* at ¶

15).

The Romanos contend that the Treasure Coast Transmission center is in Linda Romano's name.  But, under the express terms of the non-compete, the nominal owner of the business is irrelevant; Mr. Romano is prohibited from "directly or indirectly engag[ing] in the transmission repair business. . ."  (Compl. Exh. A § 19.2(b)).  The Complaint alleges that Mr. Romano is involved in the business, and that Mrs. Romano is his agent.  (Compl. ¶¶ 8, 15-16).  While proof is not required at this stage, we point out that Mr. Romano's business card identifies him as the Owner of the business (Compl. Exh. C); when the process server arrived at the Treasure Coast Transmissions center with the Summons in this case, Mr. Romano was there, Mrs. Romano was not (Mr. Romano accepted service on her behalf)  (Dkt. No. 4);  and, in their appearances in this case, both Romanos list the address of the Treasure Coast Transmissions center as their address. The Complaint adequately alleges Mr. Romano's breach of the covenant.

    C.  <u>Mrs. Romano Is Subject To The Covenant</u>

The Romanos contend that Mrs. Romano is not a party to the Franchise Agreement, and therefore not subject to the restrictions contained in the covenant.  But, their position ignores well-settled law.

First, the Complaint alleges that Mrs. Romano is Mr. Romano's agent.  (Compl. ¶ 8).

Second, not surprisingly, the Romanos are not the first to attempt to avoid covenants against competition by putting the competing business in the name of a family member or friend. Equally unsurprising is that courts have universally refused to be duped by this ruse.  For example, in *Suburban Oil Service, Inc. v. Parker*, 63 Pa. D. & C.2d 91, 93 (Pa. Ct. Com. Pl. 1973), the court held:

> The law is adamant that where a husband is enjoined from establishing a second business after covenanting not to compete, a wife should not be allowed to obtain the benefit of the proceeds of said covenant and then defiantly, in her name, establish a like

business.  This recalls the old adage "you can't have your cake and eat it too."

*See also Tantopia Franchising Co. v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 417 (E.D. Pa. 2013) (enjoining business partner of covenantor because "a non-covenantor who benefits from the convenantor's relationship with a competing business must abide by the same restrictive covenant agreed to by the convenantor"); *McCart v. H&R Block, Inc*., 470 N.E.2d 756, 760-761 (Ind. Ct. App. 1985) (applying franchise agreement covenant to husband of franchisee because his involvement "amounted to mere subterfuge designed to avoid [wife's] obligation," holding "the rule that a stranger to a covenant may be enjoined from aiding and assisting the covenanter in violating his covenant is supported by an overwhelming weight of authority"); *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74, 80 (Mo. Ct. App. 1976) ("it is reasonable to enjoin a stranger to a covenant from aiding or assisting the covenantor in violating the contract"); *Arwell Div. of Orkin Exterminating Co. v. Kendrick*, 131 Ill. App. 2d 632, 633, 267 N.E.2d 352, 354 (1971) (applying covenant to wife of covenantor because "she was not a stranger to the transactions and events from which it may be inferred she knowingly participated and aided in the evasion or violation of the restrictive covenant").

      D.  <u>The Covenant Is Reasonable And Enforceable</u>

      The Romanos contend that the covenant is unenforceable as a matter of law.  Covenants against competition contained in franchise agreements are enforceable if reasonable in scope.  In *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 511, 351 A.2d 207, 212 (1976), the Pennsylvania Supreme Court held that

> our Courts will permit the equitable enforcement of a covenant not to compete included in a franchise agreement where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and

14

the restrictions are reasonably limited as to duration of time and
geographical extent.

In determining whether the non-compete covenant was reasonably necessary, the Supreme Court

in *Piercing Pagoda* focused on whether the covenant served to protect a "legitimate business

interest".  465 Pa. at 510, 351 A.2d at 212.

In this case, there can be no doubt that the covenant not to compete is protecting the valid

business interests of ATI.  Romano agreed that he would receive and have access to "confidential

information and materials and trade secrets and have access to unique procedures and systems

developed by [ATI]."  (Compl. Exh. A, § 19.2).  Romano further agreed that "the restrictions

contained in this section 19.2 [the covenant not to compete] are reasonable and necessary to

protect the legitimate interests of [ATI]".  (*Id.*)  So, Romano has already agreed that the covenant

is "reasonable and necessary," and cannot now argue that it is not.

Courts have upheld covenants not to compete based on these same business interests of

franchisors.  In particular, the franchisor's interest in protecting confidential and proprietary

information associated with the franchise system and protecting other franchisees from unfair

competition have been held valid and support the enforcement of covenants.  *See, e.g., Piercing*

*Pagoda*, 465 Pa. at 511, 351 A.2d at 213; *Baskin-Robbins Inc. v. Golde*, No. 5:99–CV–102–

BR(3), 2000 WL 35536665, at *5 (E.D.N.C. May 25, 2000) (covenant serves a franchisor's

legitimate business interests by, among other things, "protecting the investments made by other

… franchisees who have also signed agreements containing covenants not to compete").

A franchisor has a legitimate business interest in protecting itself from unfair competition

by a former franchisee that has special, intimate knowledge of the franchisor's confidential

operating methods.  *Boulanger v. Dunkin' Donuts Inc.*, 442 Mass. 635, 815 N.E.2d 572 (2004);

*Watson v. Waffle House, Inc.*, 253 Ga. 671, 324 S.E.2d 175 (Ga. 1985); *Meineke Discount*

*Muffler v. Jaynes*, 999 F.2d 120, 123 n.5 (5th Cir. 1993) ("Examples of legitimate, protectable interests include . . . trade secrets, and other confidential or proprietary information.").

In this case, the Complaint alleges that Romano received training and was provided ATI's confidential information and material, and other unique methods, procedures and techniques developed by ATI during a business relationship that spanned twenty years. ATI has a legitimate interest in protecting the AAMCO system and its members from former franchisees using that information to compete with it. And, in the Franchise Agreement, Romano agreed that ATI had such an interest.

The nature of the interest being protected fully justifies the geographic scope of the covenant, which the Romanos challenge. A purpose of the covenant is to protect other AAMCO franchisees from unfair competition from former franchisees using the AAMCO proprietary methods to compete with them. Restricting former franchisees from competing within 10 miles of any AAMCO center, for a period of two years, is a reasonable way to accomplish that legitimate interest.

For precisely this reason, courts have upheld and enforced covenants that apply to areas surrounding other locations in the franchise system. In *Casey's v. General Stores, Inc. v. Campbell Oil Co.*, 441 N.W. 2d 758, 761 (Iowa 1989), the Iowa Supreme Court enforced a covenant of three miles from every existing franchise. The Court held:

> Noncompetition agreements between a franchisor and a franchisee
> are designed not only to protect the interests of the immediate
> parties but also to protect other franchisees against competitive
> activities. Thus, to the extent that such noncompetition agreements
> are exacted from all franchisees, each franchisee is thereby
> protected from competition from other franchisees.

*Id*. at 761. Similarly, in *Boulanger v. Dunkin' Donuts Inc.*, *supra*, the Supreme Judicial Court of Massachusetts upheld and enforced a covenant that restricted former franchisees from competing

within five miles of any Dunkin' Donuts unit.  The Court held:

> we conclude that the five-mile limit is reasonable, not only because a number of our cases have held larger geographic areas to be reasonable, but also because we agree with the judge (and the defendant) that what the covenant not to compete was protecting was the defendant's franchise system.  The issue is whether confidential information could be used by the plaintiff to harm other franchisees in other locations.

442 Mass. 645, 815 N.E. 2d at 581.  *See also Brenco Enters. v. Takeout Taxi Franchising Sys., Inc.*, No. 177164, 2003 WL 21659422, at *11-13 (Va. Cir. Ct. May 23, 2003) (enforcing covenant prohibiting competition within 10 miles of any franchisee's business).

The Romanos mischaracterize this Court's prior holdings with respect to the enforcement of the AAMCO covenant not to compete.  In fact, no Court has refused to apply the covenant in the AAMCO franchise agreement to enjoin conduct like that of the Romanos.  In both *AAMCO Transmissions, Inc. v. Graham*, CIV. A. Nos. 89–4976, CIV. A. 89–6379, 1990 WL 118050 (E.D. Pa. Aug. 9, 1990) and *AAMCO Transmissions, Inc. v. Dunlap*, Civil Action No. 11–4009, 2011 WL 3586225 (E.D. Pa. Aug. 16, 2011), the courts enjoined terminated franchisees from continuing to operate in their formerly franchised locations.  In fashioning the injunctions, the courts limited the scope of the covenant to the areas in which the franchisees were operating, but neither case presented the issue of the former franchisee competing with a different franchisee at a different location.

In *AAMCO Transmissions, Inc. v. Singh*, Civil Action No. 12–2209, 2012 WL 4510928 (E.D. Pa. Oct. 1, 2012), the Court applied the AAMCO covenant to enjoin a former franchisee who, like the Romanos, was operating a competing transmission repair center at a different location from his former franchised location, but within 10 miles of at least two other franchised AAMCO centers.  *Id*. at *2.  The court found that the geographic scope of the covenant was

reasonable. *Id*. at *4.

On Singh's motion for reconsideration, the court reaffirmed the prior ruling and specifically rejected the former franchisee's argument that the covenant was geographically overbroad because it applied to a ten-mile radius around every AAMCO center.  Judge Kelly held:

> [I]t is certainly not established law in this circuit, and even in this district, that a non-compete covenant which prohibits a former franchisee from operating a like business within a radius of ten miles of any other franchise is unreasonable and not enforceable.

Civil Action No. 12–2209, 2012 WL 5829782, at *4 (E.D. Pa. Nov. 16, 2012)  *See also Rita's Water Ice Franchise Corp. v. DBI Inv. Corp*., No. 96–306, 1996 WL 165518, at *4 (E.D. Pa. Apr. 8, 1996) (covenant prohibiting former franchisee from competing within 1.5 miles of any franchise was geographically reasonable).

Because the Complaint alleges the breach of a covenant that is reasonably drawn to meet the legitimate business interests of ATI, it states a claim for breach of contract against the Romanos.

## **CONCLUSION**

The Venue Motion and the 12(b)(6) Motion should be denied.

January 31, 2014                              Respectfully submitted,

/s/ William B. Jameson____
William B. Jameson
Attorney ID. # 58949
AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, Pennsylvania 19044
(610) 668-2900

18

James C. Rubinger
Admitted *pro hac vice*
Plave Koch PLC
12005 Sunrise Valley Drive
Suite 200
Reston, VA  20191
(703) 774-1208

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, to which the Court has ordered the

defendants be granted access.

/s/ William B. Jameson____