IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC. : | |
| : | |
| Plaintiff, : | |
| v. : | No. 13-cv-5747 |
| ROBERT V. ROMANO : | |
| : | |
| and : | |
| : | |
| LINDA ROMANO : | |
| : | |
| Defendants. : | |

## DECLARATION OF BRIAN O'DONNELL

Brian O'Donnell declares under penalty of perjury:

1. I am Senior Vice President of Operations for AAMCO Transmissions, Inc. ("ATI").

2. I make this Declaration based on my personal knowledge and the business records of ATI.

3. Since at least 1963, ATI has continually used the name "AAMCO" as its trade name, trademark and service mark in connection with the operation of a network of transmission repair centers.

4. ATI is the exclusive owner of its marks and maintains current registrations of the marks with the United States Patent and Trademark office.

5. ATI is engaged in interstate commerce in, inter alia, the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada.

6.   There are approximately 700 AAMCO locations licensed or franchised by ATI to operate transmission repair centers under the "AAMCO" trade name and trademark.

7.   AAMCO franchisees undergo substantial training in the business methods developed by ATI.

8.   AAMCO franchisees are provided with access to ATI's proprietary business methods, standards and procedures.

9.   ATI has spent many millions of dollars over its more than 50 years in business developing and improving the AAMCO brand, including its proprietary business methods, standards and procedures; training; advertising; and promotion. As a result, ATI has a substantial business and a long established goodwill associated with the name and the above marks in connection with the services provided under its trade name and trademarks.

10.   ATI has a vital interest in protecting the goodwill of its AAMCO brand, preservation and protection of its proprietary methods and procedures are essential to the maintenance of ATI's quality transmission and general automotive repair centers and the goodwill and reputation associated with the AAMCO brand.

11.   ATI has established standards and policies governing the quality of service to be provided to the public and has established procedures calling for the inspection of franchisees' centers to determine that the standards and policies are being followed.

12.   On August 18, 1992, ATI and Robert Romano entered into a franchise agreement, pursuant to which Romano was authorized to use the name and mark "AAMCO" in connection with the operation of the AAMCO Transmission Center located at 1631 North 60th Avenue, Hollywood, FL 33021. A copy of the Franchise Agreement is attached to the Complaint in this action at Exhibit A.

13.     As part of the franchising process, Romano was provided access to ATI's proprietary system of doing business, including its trade secrets.

14.     Romano attended and completed ATI's six (6) week training class at ATI's then-corporate headquarters in Bala Cynwyd, PA. At that training, Romano was given in depth instruction on how to operate an AAMCO Transmission Center.

15.     Since that time, Romano has been given access to, and benefited from, ATI's technical assistance hot line, periodicals, technical bulletins, and special ATI programs. All of these services are provided from ATI's headquarters, now in Horsham, PA.

16.     On February 20, 2013, Romano and ATI executed a termination of Franchise Agreement, a copy of which is attached to this Complaint as Exhibit B. In the Termination Agreement, Romano specifically agreed, among other things, to be bound by the post-term covenant against competition contained in Section 19.2 of the Franchise Agreement.

17.     Section 19.2 provides, in part:

**Covenant Not-To-Compete.** Franchisee acknowledges that as a franchisee of AAMCO and a participant in the System, Franchisee will receive or have access to confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his Center is located is solely as a result of the AAMCO name and marks. Therefore, to protect the System, the AAMCO name and marks and AAMCO, and to induce AAMCO to grant Franchisee the franchise set forth in this Agreement, Franchisee represents and warrants:

. . . .

(b) *Franchisee shall not...within a radius of ten (10) miles of Franchisee's former Center and ten (10) miles of any other Center in operation at the time of termination or any Center that has commenced operation during the two-year period, begin or engage in any business the same as, similar to or in competition with such Center, except for a business previously approved by AAMCO pursuant to section 8(e)*

. . . .

3

(d) Franchisee acknowledges that, in view of the nature of the System, the business of AAMCO, and the strength of the AAMCO names and marks, *the restrictions contained in this section 20 are reasonable and necessary to protect the legitimate interests of the System or AAMCO and that any violation of these restrictions will result in irreparable injury to the System or AAMCO.* Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which AAMCO shall be entitled... If Franchisee violates any restriction contained in this section 20, and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(e) Franchisee agrees that the provisions of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 20 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

Complaint, Exhibit A, § 19.2 (emphasis added).

18. Romano has retained, and we believe is using ATI's proprietary software, manuals and other materials, proprietary knowledge and trade secrets.

19. In July 2013, we became aware of a new transmission repair center operating at 2801 SE Monroe St., Stuart, FL 34994 under the name Treasure Coast Transmissions. This center was located less than 1.5 miles from an existing AAMCO center, located at 2973 Federal Highway, Stuart, FL 34996. That AAMCO center is owned and operated by Double A Automotive, Inc., an AAMCO franchisee owned by John Santagata. It has operated at the same location in Stuart since 1978.

20. Mr. Santagata reported to ATI that he believed that Romano owned Treasure Coast Transmissions. He advised us that customers had told him that Treasure Coast

Transmissions had represented that it offered "the same service as AAMCO" but that its prices were lower than AAMCO because it did not have to pay royalties.

21. Because Romano learned all that he knows about the transmission repair business through ATI, we believe Romano is using his knowledge of the AAMCO system and proprietary methods of doing business and other confidential information belonging to ATI in his competing business.

22. Romano is no longer burdened with paying franchise fees or honoring AAMCO warranties, a fact he apparently is using to solicit customers away from the existing AAMCO center.

23. ATI sent an investigator to the Treasure Coast Transmissions center. As a result of his report, ATI became convinced that Romano was the owner and operator of Treasure Coast Transmissions.

24. The Treasure Coast Transmissions website (www.treasurecoasttransmissions.com) boasts of the "20 years of industry experience." Romano, of course, had precisely 20 years of experience as an AAMCO franchisee. He is now using what he learned from ATI in the operation of an AAMCO center to compete with another AAMCO center.

25. The covenant against competition contained in AAMCO franchise agreements is one of the most important ways ATI protects the AAMCO brand and AAMCO franchisees. ATI does not license AAMCO centers in close proximity to one another, in order that AAMCO centers do not unduly compete with one another and each franchisee has a fair and reasonable opportunity to be successful. Similarly, the covenant against competition contained in virtually all AAMCO franchise agreements prevents franchisees from taking the substantial knowledge

and expertise they have obtained from ATI and as AAMCO franchisees to compete with other AAMCO franchisees.

26. A franchisee's breach of a covenant against competition, by opening a competing transmission repair center in direct competition with AAMCO centers would cause irreparable harm to ATI and the AAMCO brand. If AAMCO franchisees were free to take what they have learned about operating an AAMCO center and compete with other AAMCO centers, the incalculable investment that ATI has made in the AAMCO brand would be rendered virtually worthless.

27. The scope of the covenant against competition in the AAMCO franchise agreements is reasonable. The time scope of during the term of the agreement and two years thereafter protects ATI from having current information used against us. The geographic scope – within 10 miles of the franchisee's prior location or any other existing AAMCO location – directly addresses the concern that the AAMCO business methods and procedures not be used to compete directly with AAMCO centers. Ten miles is a reasonable radius to constitute a trade area in which an AAMCO center does business. Certainly, the less than 1.5 miles distance between the Treasure Coast Transmission center and the existing AAMCO center in Stuart, FL is directly competitive, and it is reasonable and necessary to prevent a former franchisee from engaging in competition with a current franchisee less than 1.5 miles away.

28. The public interest will be served by enforcing the covenant against competition. The public has an interest in the enforceability of contracts, as well as in protecting businesses from unfair competition from former franchisees using the franchisor's proprietary information to compete with it.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed this **30** day of January 2014 at Horsham, Pennsylvania.

_____
Brian O'Donnell