## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-5747 |
| v. | : | |
| | : | |
| ROBERT V. ROMANO and LINDA ROMANO, | : | |
| Defendants. | : | |

**August _21, 2014**                                                                 **Anita B. Brody, J.**

## <u>MEMORANDUM</u>

Plaintiff Aamco Transmissions, Inc. ("AAMCO") brings suit against its former franchisee Defendant Robert Romano and his wife Defendant Linda Romano (collectively, the "Romanos"). AAMCO alleges that the Romanos breached a covenant not-to-compete by operating a new transmission repair business in close proximity to an AAMCO center. AAMCO seeks specific performance of the covenant not-to-compete as well as costs and attorneys' fees. I have subject matter jurisdiction over AAMCO's claims pursuant to 28 U.S.C. § 1332.[1]

---

[1] The Romanos challenge my subject matter jurisdiction over the case, arguing that AAMCO has failed to set forth facts that establish an amount in controversy in excess of $75,000 as required under 28 U.S.C. § 1332. "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab. Co.,* 303 U.S. 283, 288-89 (1938). Where the plaintiff in a diversity action seeks injunctive or declaratory relief, the amount in controversy is determined by "the value of the object of the litigation." *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *see McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936). AAMCO alleges in the Complaint that the amount in controversy exceeds $75,000 and that the Romano's refusal to honor the non-compete interferes with AAMCO's ability to further develop the market. Compl. ¶¶ 4, 21. In its opposition to the motion to dismiss, AAMCO further argues that the Romanos' conduct threatens the viability of every AAMCO franchise and AAMCO's millions of dollars of investment in the AAMCO brand. O'Donnell Decl. ¶¶ 25-26, 28. Given the extent of possible damages, there is no legal certainty that the claim is for less than $75,000. Therefore, I will deny the motion to dismiss on this ground.

The Romanos move to dismiss AAMCO's suit on several grounds; they also move for a transfer of venue to the Southern District of Florida.  I will deny their motions for the reasons discussed below.

## I.  BACKGROUND[2]

AAMCO, a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania, franchises the AAMCO name and trademark to transmission and general automotive repair centers throughout the United States and Canada.  Compl. ¶ 6.  On August 18, 1992, Robert Romano, a citizen of Florida, entered into a franchise agreement (the "Franchise Agreement") with AAMCO.  The Franchise Agreement permitted Robert Romano to operate an automotive repair center located at 1631 North 60th Avenue, Hollywood, Florida under the AAMCO name and trademark.  Compl. ¶ 7.  At all times, his wife Linda Romano, also a citizen of Florida, acted as his agent in business.  Compl. ¶ 8.  In August 1992, just prior to opening his franchise, Robert Romano attended AAMCO's owner training class and was provided with AAMCO's proprietary manuals, customer lists, and software.  Compl. ¶ 10.  AAMCO also disclosed to Robert Romano its proprietary systems and trade secrets for operating a successful automotive repair business.  Compl. ¶ 9.  In return, Robert Romano agreed to pay to AAMCO a weekly franchise fee of seven percent of his franchise's gross receipts from the previous week.  Compl. Ex. A § 4.2.

The Franchise Agreement also contained the following terms:

- Section 16.1 – "Duration of the Franchise.  This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years.  Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years."

---

[2] As required in ruling on a motion to dismiss, all facts are taken from the Complaint.

- Section 19.2(b) – "For a period of two (2) years after the termination of Expiration of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center.  The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b)."

- Section 19.2(c) – "Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO."

- Section 21.1 – "Jurisdiction.  This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania and shall be interpreted according to the laws of Pennsylvania. . . .  Franchisee further agrees to the jurisdiction and venue of any proper court of general jurisdiction in either Pennsylvania County, Pennsylvania, Montgomery County, Pennsylvania or in the county in which AAMCO has its principal place of business.  Franchisee more particularly agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania with respect to any proceedings which arise out of or are connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue."

Robert Romano operated his franchise at the Hollywood location until February 20, 2013, at which time Robert Romano and AAMCO mutually accepted and signed a Termination of Franchise Agreement (the "Termination Agreement").  Compl. ¶ 11.  Under the Termination Agreement, Robert Romano released all rights he had under the Franchise Agreement and AAMCO released Robert Romano from all obligations he had under the Franchise Agreement with the exception of the obligations set forth in Sections 12.2, 18.1, 19.1, and 19.2 of the Franchise Agreement.  Compl. Ex. B.  By explicitly extending the obligations owed under Section 19.2, Robert Romano agreed to comply post-termination with the covenant not-to-compete.  Compl. ¶ 12.  The earliest date on which the covenant not-to-compete could expire is February 19, 2015.  Compl. ¶ 14.

The Romanos are currently operating a transmission repair business under the name Treasure Coast Transmissions located at 2801 SE Monroe Street, Stuart, Florida.[3]  Compl. Ex. C. The Romanos' new business is roughly 100 miles north of the Romanos' Hollywood franchise, but less than 1.5 miles away from the nearest AAMCO center.  Compl. ¶¶ 15-16; Compl. Ex. D.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO DISMISS FOR IMPROPER VENUE

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), the Romanos move to dismiss the action for lack of personal jurisdiction and improper venue.  The Romanos argue that this Court has no personal jurisdiction over them because they have no minimum contacts and no continuous relationship with Pennsylvania.  They argue that the Eastern District of Pennsylvania is an improper venue because they do not reside in Pennsylvania and would be financially burdened if forced to defend the case here.

The Romanos also dispute the applicability of any forum selection clause to this action because they believe there has not been a valid franchise agreement between AAMCO and Robert Romano since August 18, 2007.  Alternatively, they argue that the February 20, 2013 Termination Agreement ended Robert Romano's obligations under the Franchise Agreement's forum selection clause.  They also argue that Linda Romano has never been in any contractual relationship with AAMCO and thus is not subject to any forum selection clause.

### A.  Legal Standard

Under Federal Rule of Civil Procedure 4(k), a district court exercises personal jurisdiction over a non-resident defendant according to the law of the state where it sits.  *See* Fed. R. Civ. P. 4(k)(1)(A); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir.

---

[3] AAMCO incorrectly stated in its Complaint that the Romanos' new business was located in Hollywood, Florida, but this mistake was acknowledged and corrected in the AAMCO's Brief in Opposition to Defendants' Motion to Dismiss.

2007).  The Pennsylvania long-arm statute provides for jurisdiction "based on the most minimum

contact with th[e] Commonwealth allowed under the Constitution of the United States."  42 Pa.

Cons. Stat. Ann. § 5322(b); *Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 2002) (finding

that Pennsylvania's long-arm statute is coextensive with the constitutional limits of due process).

Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if the

defendant has "certain minimum contacts with [Pennsylvania] such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice."  *O'Connor*, 496 F.3d

at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A party can also

consent, however, to personal jurisdiction in a court through a forum selection clause.  *See*

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

In an action based on diversity jurisdiction, venue is proper only in: (1) a judicial district

where any defendant resides, if all defendants reside in the same state; (2) a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated; or (3) a judicial district in

which any defendant is subject to personal jurisdiction at the time the action is commenced, if

there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(a).

Additionally, venue may be proper, however, if consented to by the parties in a forum selection

clause.  *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 591-94 (1991).

## B. Discussion

The Franchise Agreement between Robert Romano and AAMCO contains a forum

selection clause under which Robert Romano agreed to jurisdiction and venue in the Eastern

District of Pennsylvania.  Compl. Ex. A § 21.1.  The Romanos do not argue that the forum

selection clause is unenforceable; rather they present two reasons why the forum selection clause no longer applies to this dispute.

First, the Romanos argue that AAMCO improperly renewed the Franchise Agreement originally signed on August 18, 1992 such that the Franchise Agreement lapsed and the forum selection clause contained therein is no longer in effect.  The Franchise Agreement renewed automatically on August 18, 2007 unless one of the parties gave written notice of its intention not to renew by August 18, 2006.   Compl. Ex. A § 16.1.  The Romanos allege that during the summer of 2006, AAMCO failed to respond in a timely manner to Robert Romano's requests for information about the terms of the contemporary version of the AAMCO franchise agreement.  There is no allegation, however, that either party ultimately gave written notice of its intention not to renew the Franchise Agreement.  To the contrary, Robert Romano continued to operate as an AAMCO franchisee until February 20, 2013.  This suggests that the Franchise Agreement did renew on August 18, 2007 and was in force at the time AAMCO and Robert Romano executed the Termination Agreement.

Second, the Romanos argue that the forum selection clause did not survive the termination of the Franchise Agreement.  Under the Termination Agreement, AAMCO released Robert Romano from all obligations he had under the Franchise Agreement with the exception of the obligations set forth in Sections 12.2, 18.1, 19.1, and 19.2.  Compl. Ex. B.  The Romanos argue that because the Termination Agreement did not explicitly mention the continuation of Robert Romano's obligations under the forum selection clause in Section 21.1, the forum selection clause no longer applies to this dispute.

Courts that have considered this issue have consistently rejected the Romano's argument. *See TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 752 F.Supp.2d 517, 535 (E.D. Pa.

2010); *Versar, Inc. v. Ball*, No. 01-1302, 2001 WL 818354, at *2 (E.D. Pa. July 12, 2001); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 238 (S.D. Tex. 1997); *Allied Sound, Inc. v. Dukane Corp.*, 934 F.Supp. 272, 275 (M.D. Tenn. 1996); *Young Women's Christian Ass'n of the U.S. v. HMC Entm't, Inc.*, No. 91-7943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992); *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843, 846 (N.D. Ill. 1989); *see also* 13 *Corbin on Contracts* § 67.2, at 12 (rev. ed. 2003) ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses.").  "Unless otherwise expressed, a choice of forum clause does not expire upon termination of the contract from which it derives. . . .  [T]o read the contract so as to disregard the forum-selection clause for actions brought following termination would be to distort its usual, common sense meaning and applicability."  *Versar*, 2001 WL 818354, at *2; *see Texas Source Group*, 967 F.Supp. at 236 ("[T]o rule otherwise, a party could defeat a validly negotiated forum-selection clause by simply alleging that the nonmoving party breached the contract.").

Courts have upheld the applicability of forum selection clauses even where the termination provision of the contract expressly provides for the survival of certain enumerated provisions but not the forum selection clause.  *See TriState*, 752 F.Supp.2d at 535; *Versar*, 2001 WL 818354, at *2; *Texas Source Group*, 967 F.Supp. at 238; *Allied Sound*, 934 F.Supp. at 275; *Advent,* 709 F.Supp. at 846.  Courts finding that forum selection clauses remained in effect have relied primarily on the broad language of forum selection clauses and the absence of any explicit language indicating the termination of the clause.  In particular, I am persuaded by Judge Yohn's

cogent analysis in *TriState* as to why the forum selection clause at issue in that case survived

termination of the Franchise Agreement:

> The forum-selection clause applies to "any legal dispute[ ]" (Agreement § 22), and there is nothing to suggest that the parties intended that the clause would not apply to disputes regarding an alleged breach of contract. . . .  The fact that the agreement expressly provides for the survival of certain other contractual provisions, but not the forum-selection clause, does not alter the analysis.  The exclusion of the forum-selection clause from the "survival" clause—which, as a general matter, is intended to ensure the survival of certain contractual provisions that might otherwise be extinguished upon termination of the agreement—simply does not evidence a clear intent that, upon termination of the agreement, the forum-selection clause would cease to apply to claims arising under the agreement.

*Id*. at 534-36; *see also Nolde Bros., Inc. v. Bakery & Confectionery Workers Union, Local No.*

*358,* 430 U.S. 243, 252 (1977) (holding that an obligation to act pursuant to an arbitration clause

does not automatically end upon the termination of the agreement).

In this case, the forum selection clause in the Franchise Agreement contains similarly

broad language regarding its applicability.  The Franchise Agreement states that the Franchisee

agrees to jurisdiction and venue in this Court "with respect to any proceedings which arise out of

or are connected in any way with this Agreement or its performance."  Compl. Ex. A § 21.1.

The Termination Agreement makes no reference to the forum selection clause at Section 21.2.

Thus, the Termination Agreement does not evidence a clear intent that the forum selection clause

would cease to apply to claims arising under the Franchise Agreement upon termination.

Having found a valid forum selection clause applicable to this dispute, the next question

is whether the forum selection clause applies to Linda Romano as well as Robert Romano.  The

Romanos argue that the forum selection clause does not apply to Linda Romano because she was

not a signatory to the Franchise Agreement.  Nevertheless, "[i]t is widely accepted that non-

signatory third-parties who are closely related to [a] contractual relationship are bound by forum

Case 2:13-cv-05747-AB   Document 30   Filed 08/21/14   Page 9 of 18

selection clauses contained in the contracts underlying the relevant contractual relationship."
*First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Baltimore, Inc.*, No. 11-5821, 2012 WL 1150131,
at *3 (E.D. Pa. Apr. 5, 2012) (citing *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509,
514 n.5 (9th Cir. 1988)); *see Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995). "In the
Third Circuit, a non-signatory party may enforce a forum selection clause in a contract if the
party is a third-party beneficiary of the contract or is closely related to the contractual
relationship or dispute such that it is foreseeable that the party will be bound." *D'Elia v. Grand
Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010); *see First
Fin. Mgmt. Grp.*, 2012 WL 1150131, at *3 (quoting *Donachy v. Intrawest U.S. Holdings, Inc.*,
No. 10-4038, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011) ("Third parties that 'should have
foreseen governance by the clause' may also be bound by it."))[4]

Given her spousal relationship with Robert Romano, Linda Romano is so closely related
to Robert Romano's dispute with AAMCO that she should have foreseen being bound by the
forum selection clause in the Franchisee Agreement. *See Beck v. CIT Group*, No. 94-5513, 1995
WL 394067, at *6 (E.D. Pa. June 29, 1995) (applying a forum selection clause in a security
agreement to the wife of a signatory, even though she had not executed it herself). Moreover, the
allegations that Robert Romano continues to be involved in the new transmission center that she
owns suggests that she is a third-party beneficiary of the knowledge and experience that Robert

---

[4] Similarly, the Pennsylvania Supreme Court has "historically . . . held that third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract." *Johnson v. Pennsylvania Nat. Ins. Companies*, 594 A.2d 296, 298 (Pa. 1991). "[T]he rights of an alleged third party beneficiary may arise [sic] no higher than the rights of the parties to the contract and . . . they are vulnerable to the same limitations which may be asserted between the promisor and the promisee." *Jewelcor Jewelers & Distributors, Inc. v. Corr*, 542 A.2d 72, 80 (Pa.Super.Ct. 1988), *appeal denied, sub nom., Granjewel Jewelers & Distributors, Inc. v. Corr*, 569 A.2d 1367 (Pa. 1989) (citation omitted).

Romano gained in the course of his franchisee relationship with AAMCO.  Given this status, Linda Romano is also bound by the forum selection clause.

In sum, I find that a valid forum selection clause consenting to jurisdiction and venue in the Eastern District of Pennsylvania applies to both Robert Romano and Linda Romano. Therefore, I will deny the motions to dismiss for lack of personal jurisdiction and improper venue.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Romanos argue that AAMCO has failed to state a claim on which relief can be granted because (1) Robert Romano does not own and is not compensated by Treasure Coast Transmissions; (2) Linda Romano, the owner/operator of Treasure Coast Transmissions, is not subject to the non-competition provision in the Franchise Agreement; and (3) the geographic scope of non-competition provision is unreasonable and unenforceable as a matter of law.

### A.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "a complaint

10

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted). A court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Thus, in this case, in ruling on the motion to dismiss under Rule 12(b)(6), I will consider the Franchise Agreement, the Termination Agreement, and the other exhibits attached to the Complaint.

## B. Discussion[5]

First, the Romanos argue that AAMCO has failed to state a claim against Robert Romano because he does not own and is not compensated by the new transmission center, Treasure Coast Transmissions. Under Section 19.2(b) of the Franchise Agreement, Robert Romano agreed not to engage directly or indirectly in the transmission repair business within a radius of ten miles of his former center or any other AAMCO center for a period of two years. Compl. Ex. A. AAMCO alleges that Treasure Coast Transmissions operates 1.5 miles from an existing AAMCO center and that it opened less than five months after the execution of the Termination Agreement. Compl. ¶¶ 15, 16. It also alleges that Robert Romano is involved in the operation of Treasure Coast Transmissions and holds himself out as its owner. Compl. ¶¶ 15, 16. Robert

---

[5] As noted above, Pennsylvania law governs the interpretation of the Franchise Agreement. Compl. Ex A § 21.1.

Romano's business card attached to the Complaint identifies him as the owner of Treasure Coast Transmissions.  Compl. Ex. C.  The allegations in AAMCO's Complaint are sufficient to state a claim for breach of the Franchise Agreement by Robert Romano on which AAMCO may be entitled to relief.  I will deny the motion to dismiss on this ground.

Second, the Romanos argue that AAMCO has failed to state a claim against Linda Romano because she is not subject to the non-competition provision in the Franchise Agreement. The Complaint alleges that Linda Romano has at all times been Robert Romano's agent in business and currently co-owns and co-operates Treasure Coast Transmissions with him.  Compl. ¶¶ 8, 16.  "It is well-established that a non-covenantor who benefits from the covenantor's relationship with a competing business must abide by the same restrictive covenant agreed to by the covenantor."  *Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 416-17 (E.D. Pa. 2013) (citing *Total Car Franchising Corp. v. L & S Paint Works, Inc.*, 981 F.Supp. 1079, 1082 (N.D. Tenn. 1997) (not only covenantor and new company bound but also his "servants or agents and those acting in collusion or combination with him") (citations omitted)).  The allegation that Linda Romano is operating Treasure Coast Transmissions as Robert Romano's agent is a sufficient basis to seek specific enforcement of the Franchise Agreement against her.  Moreover, in Pennsylvania, "[t]he law is adamant that where a husband is enjoined from establishing a second business after covenanting not to compete, a wife should not be allowed to obtain the benefit of the proceeds of said covenant and then defiantly, in her name, establish a like business."  *Suburban Oil Serv., Inc. v. Parker*, 63 Pa. D. & C.2d 91, 93 (Pa. Com. Pl. 1973).  Thus, the non-competition provision may also apply to Linda Romano, and these allegations are sufficient to state a claim against her on which AAMCO may be entitled to relief.  I will deny the motion to dismiss on this ground.

Lastly, the Romanos argue that the geographic scope of non-competition provision is unreasonable and unenforceable as a matter of law.  Pennsylvania courts will "permit the equitable enforcement of a covenant not to compete included in a franchise agreement where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and the restrictions are reasonably limited as to duration of time and geographical extent."  *Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 212 (Pa. 1976). Unreasonableness of the geographic scope of a non-compete is an affirmative defense on which the Romanos bear the burden of proof.  *WellSpan Health v. Bayliss,* 869 A.2d 990, 999 (Pa.Super.Ct. 2005).  The Third Circuit has held that because reasonableness is a fact-intensive inquiry, it should not be determined on the pleadings unless the unreasonableness is clear from the face of the complaint.  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234-35 (3d Cir. 2007) ("Generally speaking, we will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6).  A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however.") (citing *In re Tower Air,* 416 F.3d 229, 238 (3d Cir. 2005)).

At this stage, I cannot conclude that the geographic scope of the non-competition provision prohibiting Robert Romano from engaging directly or indirectly in the transmission repair business within a radius of ten miles of his former center or any other AAMCO center is unreasonable.  As the Third Circuit has stated, "In this Information Age, a *per se* rule against broad geographic restrictions would seem hopelessly antiquated, and, indeed, Pennsylvania courts (and federal district courts applying Pennsylvania law) have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee's duties."  *Victaulic Co.*, 499 F.3d at 238 (citing *Volunteer Fireman's Ins. Servs., Inc. v. CIGNA*

13

*Prop. & Cas. Ins. Agency*, 693 A.2d 1330, 1338 (Pa.Super.Ct. 1997); *Nat'l Bus. Servs. v. Wright*, 2 F.Supp.2d 701, 708 (E.D. Pa. 1998); *Graphic Mgmt. Assocs. v. Hatt*, No. 97-6961, 1998 WL 159035, at *14 (E.D. Pa. Mar. 18, 1998); *Kramer v. Robec, Inc.*, 824 F.Supp. 508, 512 (E.D. Pa. 1992)).  AAMCO franchises its name and trademark to centers across the United States and Canada.  Compl. ¶ 6.  Robert Romano attended AAMCO's owner training class during which AAMCO disclosed to him its proprietary systems and trade secrets for operating a successful automotive repair business.  Compl. ¶ 9.  Robert Romano could use this specialized knowledge at any location in the United States or Canada to compete with other licensed AAMCO centers. *See Victaulic Co.*, 499 F.3d at 238 ("[I]f Victaulic gave Tieman some sort of specialized training, it would be legitimate for it to prevent him from using that training for the benefit of its primary competitors anywhere they compete."); *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 734 (Pa. Super. 1994) ("An employee may receive specialized training and skills, and learn the carefully guarded methods of doing business which are the trade secrets of a particular enterprise. To prevent an employee from utilizing such training and information in competition with his former employer, for the patronage of the public at large, restrictive covenants are entered into.").  It is therefore possible that the geographic scope of the covenant is reasonable.

In fact, courts in this District have reached differing conclusions about the reasonableness of the geographic scope of the AAMCO non-compete covenant.  *See Insulation Corp. of Am.*, 667 A.2d at 734 ("A restrictive covenant found to be reasonable in one case may be unreasonable in others.").  "It is certainly not established law in this circuit, and even in this district, that a non-compete covenant which prohibits a former franchisee from operating a like business within a radius of ten miles of any other franchise is unreasonable and not enforceable." *AAMCO Transmissions, Inc. v. Singh*, No. 12-2209, 2012 WL 5829782, at *4 (E.D. Pa. Nov. 16,

2012).  In *Singh*, where a former franchisee opened a new center within ten miles of two existing AAMCO franchises, the court denied a motion to reconsider its finding that the prohibition on opening a center within ten miles of any AAMCO franchise was reasonable.  In reaching its conclusion, the *Singh* court reviewed *AAMCO Transmission, Inc. v. Dunlap*, No. 11-4009, 2011 WL 3586225 (E.D. Pa. Aug. 16, 2011) and *AAMCO Transmission, Inc. v. Graham*, Nos. 89-4976 & 89-6379, 1990 WL 118050 (E.D. Pa. Aug. 9, 1990), both of which involved similar AAMCO Franchise Agreements.  The courts in *Dunlap* and *Graham* limited the restrictive covenant to ten miles from the transmission center at issue and to the local metropolitan area, respectively.   The *Singh* court contrasted those results with the holding in *Otiogiakhi v. AAMCO Transmissions, Inc.*, No. 11-4620, 2011 WL 5825953 (D.N.J. Nov. 17, 2011) in which the court found the ten mile from any AAMCO center limitation reasonable.  *Id*. at *5-6.  Therefore, I will deny without prejudice the motion to dismiss for failure to state a claim based on the unreasonableness of the geographic scope of the covenant not-to-compete.

## IV. MOTION TO TRANSFER/FORUM NON-CONVENIENS

The Romanos argue that even if the Court has personal jurisdiction over them and venue is proper in this District, the Court should transfer the action to the Southern District of Florida because of the financial burden they would face if forced to defend this action in Pennsylvania and the location of the records and witnesses in south Florida.

### A.  Legal Standard

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In deciding whether to transfer a case, a court must consider "the private and public

interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). "[T]here is no definitive formula or list of the factors to consider . . . ." *Id.* Private interests that have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted). Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted).  The burden of establishing the need for transfer rests with the movant, and "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."  *Id*. at 879; *see also Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request . . . .").

### B.  Discussion

The Romanos have failed to establish that the balance of private and public interests weighs in favor of the requested transfer.  With respect to the private interest factors, AAMCO's choice of forum in this Court, expressed through the forum selection clause, weighs heavily in favor of the case remaining here.  The Supreme Court has held that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected

forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568,

582 (2013).  While the forum selection clause at issue in *Atlantic Marine* was mandatory and the

forum selection clause in this case is permissive,[6] the Supreme Court has explained that the

existence of a forum selection clause of any kind significantly undercuts any argument that the

preselected forum is inconvenient for the parties or their witnesses.   Under this rationale, the

Romanos' claim that trying the case in this District would be financially burdensome to them

does not justify transfer to Florida when it would simply shift any expense associated with travel

to AAMCO.  *See Rogal v. Skilstaf*, 446 F. Supp. 2d 334, 335 (E.D. Pa. 2006) ("The purpose of §

1404(a) . . .  [is] not to shift the inconvenience from one party to the other.").  Therefore, I find

that the convenience of the parties and the witnesses is not a compelling factor in favor of

transfer.  As for the remaining private interest factors, I recognize some relevant records may be

in south Florida where the Romanos have operated both of their transmission centers; however, a

significant number of documents may also be located at AAMCO's headquarters in this District.

Thus, the private interest factors weigh against the transfer of the case.

      The public interest factors also weigh in favor of retaining this case in the Eastern District

of Pennsylvania.  A judgment rendered in this Court is equally as enforceable as one rendered by

the Southern District of Florida.  As for the local interest in deciding local controversies at home,

this Court has a greater interest in deciding the case because it involves alleged injury sustained

---

[6] The language of the clause in this case suggests that it is a permissive forum selection clause.  Compl. Ex. A §21.1
("Franchisee further agrees to the jurisdiction and venue of any proper court of general jurisdiction in either
Pennsylvania County, Pennsylvania, Montgomery County, Pennsylvania or in the county in which AAMCO has its
principal place of business.  Franchisee more particularly agrees to the jurisdiction and venue of the United States
District Court for the Eastern District of Pennsylvania with respect to any proceedings which arise out of or are
connected in any way with this Agreement or its performance . . . .").  Since *Atlantic Marine*, district courts have
split on whether the private interest factors weigh entirely in favor of the preselected forum in the presence of a
permissive forum selection clause.  *Compare RELCO Locomotives, Inc. v. AllRail, Inc.*, No. 13-00394, 2014 WL
1047153, at *8 (S.D. Iowa Mar. 5, 2014) (conducting traditional forum non conveniens analysis in the context of a
permissive forum selection clause) *with Compass Bank v. Palmer*, No. 13-831, 2014 WL 355986, at *5-6 (W.D.
Tex. Jan. 30, 2014) (finding forum selection clauses permissive and following *Atlantic Marine*'s direction for
enforcement for forum selection clauses within the § 1404(a) framework).

by a local Pennsylvania company.  With respect to the familiarity of the trial judge with applicable state law, the Franchise Agreement at the center of this case is governed by Pennsylvania with which this Court is especially familiar.  Compl. Ex. A §21.1.  The public interest factors do not warrant transfer to the Southern District of Florida.  Therefore, I will deny the motion to transfer for forum non conveniens.

## VI. CONCLUSION

In summary, I will deny the Romanos' motions to dismiss and their motion to transfer.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: