IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-5747 |
| v. | : | |
| | : | |
| ROBERT V. ROMANO and LINDA ROMANO, | : | |
|     Defendants. | : | |

**March 1, 2016**                                                                                                           **Anita B. Brody, J.**

## **MEMORANDUM**

**I.  INTRODUCTION**

      Plaintiff Aamco Transmissions, Inc. ("AAMCO") brings suit against its former franchisee, Defendant Robert Romano, and his wife, Defendant Linda Romano (collectively, the "Romanos"). AAMCO is a franchisor of transmission repair centers operating throughout the United States and Canada. In 1992, the Romanos entered into a franchise agreement (the "Franchise Agreement") with AAMCO and operated an AAMCO franchise in Hollywood, Florida for twenty-one years.[1] In February 2013, the Romanos sold their AAMCO franchise and amicably terminated their franchisee relationship with AAMCO. Five months later, the Romanos opened an automotive and transmission repair business more than ninety miles from their prior AAMCO franchise location, but in close proximity to another AAMCO franchise. AAMCO alleges that the Romanos breached the covenant not-to-compete ("non-compete" or "non-compete provision") in the Franchise Agreement by operating their automotive and

---

[1] Although AAMCO only entered into a franchise relationship with Robert Romano, Linda Romano at all times acted as his agent in business. At the motion to dismiss stage, I found that Linda Romano is bound by the terms of the Franchise Agreement. *See Aamco Transmissions, Inc. v. Romano*, 42 F.Supp.3d 700, 708-09 (E.D. Pa. 2014). Therefore, I refer to the Romanos collectively when discussing their relationship with AAMCO.

1

transmission repair business near another AAMCO franchise. AAMCO seeks a permanent injunction to enforce the covenant not-to-compete as well as costs and attorneys' fees.[2] The Romanos counter-claimed against AAMCO for a declaratory judgment that the Romanos did not violate the covenant not-to-compete and that the covenant is unenforceable against them.

On February 8, 2016, the parties appeared before me for a bench trial. I have considered the testimony from the witnesses, reviewed the documentary evidence, and examined the relevant law.

## II. FINDINGS OF FACT

At the bench trial on February 8, 2016, AAMCO presented four witnesses: John Santagata, an AAMCO franchisee who operates a franchise in Stuart, Florida; Warren Berest, a legal support coordinator for AAMCO; Michael Pekula, AAMCO's Director of Consumer Support; and Robert J. Rajkowski, AAMCO's Chief Operating Officer. The Romanos, proceeding *pro se*, both testified. AAMCO then presented a rebuttal witness, Derik Beck, a digital marketing specialist for an AAMCO-affiliated company. Upon consideration of the evidence presented at trial, I make the following findings:[3]

### a. Robert Romano's Experience with Automotive Repair

Robert Romano has been working on cars and repairing transmissions since he was seventeen years old. He worked in the automotive repair industry for fifteen years before he became an AAMCO franchisee. During that time, Romano developed his knowledge and skills in transmission and automotive repairs. At thirty-two, Romano became an AAMCO franchisee and operated an AAMCO franchise in Hollywood, Florida for twenty-one years.

---

[2] I have subject matter jurisdiction over AAMCO's claims pursuant to 28 U.S.C. § 1332.
[3] Unless otherwise noted, the findings of fact are based on the documentary exhibits and witness testimony presented at the bench trial.

### b. AAMCO's Franchise Business

AAMCO is a Pennsylvania corporation with its primary place of business in Horsham, Pennsylvania. AAMCO franchises or licenses its trademark and name to others to operate transmission repair centers throughout the United States and Canada. AAMCO actively selects and approves sites for its franchises. In order to find an acceptable franchise site, AAMCO employs proprietary territory models to locate an area with available business volume and market density to meets its standards. Due to the local nature of the transmission repair business, AAMCO's site selection method does not involve specific territory restrictions around existing AAMCO locations. AAMCO may therefore approve sites located near other AAMCO franchises as long as the area has the appropriate business volume and market density.

Once AAMCO finds a site, it equips the center with the necessary tools and provides the franchisee with training, materials, and support on a variety of topics, including: customer recruitment, interaction, and retention; franchise management; advertising and marketing research; compliance with government regulations; and technological training and support. AAMCO requires all of its franchisees to attend an initial training program that spans several weeks and involves both in-classroom lessons and onsite shadowing. In addition, AAMCO provides ongoing support to its franchisees through periodic visits to franchise locations, webinar trainings, updates on new technology and transmission systems, and access to a telephone "hot line" for technological support.

In return for the use of AAMCO's name, trademark, training materials, and support services, franchisees pay AAMCO a flat fee to operate the franchise and a weekly percentage of their sales.

### c. The Franchise Agreement

On August 18, 1992, Robert Romano entered into the Franchise Agreement with AAMCO.  Franchise Agreement, Ex. P-2.  The Franchise Agreement set forth the rights and obligations of both parties.  Pursuant to the Franchise Agreement, Robert Romano was authorized to operate a transmission repair center in Hollywood, Florida under the AAMCO name and trademark.  *Id.*  In exchange, the Franchise Agreement obligated Mr. Romano to pay an initial service and license fee, as well as a franchise fee of seven percent of the franchise's gross weekly sales.  *Id.* at §§ 4.1, 4.2.  The Franchise Agreement included an initial term of fifteen years and provided for automatic renewal for another fifteen year term unless either party gave notice of intent not to renew.  *Id.* at § 16.1.  In 2006, the parties renewed the Franchise Agreement for an additional fifteen years.

The Franchise Agreement also included a non-compete provision.  The non-compete, located at Section 19.2, provided in relevant part:

> Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO.  Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark.  Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:
>
> \*     \*     \*
>
> (b) **For a period of two (2) years after the termination of Expiration of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center.  The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b)**.
>
> (c) Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of

4

> AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO. Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits, and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled. If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.
>
> (d) Franchisee agrees that the provision of this covenant not-to-compete are reasonable. If, however, any court should hold that the duration of geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

*Id.* at § 19.2 (emphasis added). The Franchise Agreement did not include a provision guaranteeing the Romanos exclusive rights to operate a transmission repair business under the AAMCO name and trademark within a certain territorial area.

After he entered into the Franchise Agreement with AAMCO, Robert Romano attended an AAMCO training class and received AAMCO's operations manual. Romano was also given access to AAMCO's policies and procedures for operating a successful AAMCO franchise business. Thereafter, the Romanos began operating a transmission repair business under the AAMCO name and trademark at 1631 North 60th Avenue, Hollywood, Florida. At the trial, Robert Romano stated that nearly all of his business at the franchise consisted of transmission repairs. The Romanos operated the AAMCO franchise in Hollywood, Florida for twenty-one years.

### d. The End of the Franchise Relationship Between AAMCO and The Romanos

In February 2013, with AAMCO's approval, the Romanos sold their franchise and transferred the franchise rights and remaining years of their franchise term to the buyer. On

February 20, 2013, the Romanos and AAMCO mutually accepted and signed a Termination of Franchise Agreement (the "Termination Agreement"). The Termination Agreement ended the franchisor-franchisee relationship between the parties. The Termination Agreement provided:

> Franchisee hereby releases all rights she/he may have under the Franchise Agreement and is hereby released by Franchisor from all personal obligations she/he may have under the Franchise Agreement, except for those obligations set forth in Sections 12.2, 18.1, 19.1, & 19.2, and the Franchise Agreement is hereby terminated.

Termination Agreement, Ex. P-3. The Termination Agreement preserved the obligations owed by the Romanos under Section 19.2, the non-compete provision. The Romanos also signed a General Release, which constituted "a full and complete release of all rights or claims of any nature" against AAMCO. General Release, Ex. P-4.

### e. The Romanos Open Treasure Coast Transmissions

After selling their AAMCO franchise, the Romanos moved away from Hollywood, Florida. In July 2013, five months after terminating their relationship with AAMCO, the Romanos opened a transmission and automotive repair business under the name Treasure Coast Transmissions ("Treasure Coast"), located at 2801 SE Monroe Street, Stuart, Florida. The Romanos continue to own and operate Treasure Coast.

Treasure Coast is more than ninety miles north of the Romanos' former Hollywood, Florida AAMCO franchise and is located in a warehouse district off the main highway along the Florida coastline. Treasure Coast is not visible from the highway. The Romanos explained that they chose the Stuart, Florida location because it was the only place with a rent that they could afford.[4] In addition, Robert Romano stated that the geography of Florida along the coastline limited the possible locations for Treasure Coast.

---

[4] During AAMCO's case in chief, AAMCO read selections of the Romanos' deposition testimony into evidence without objection from the Romanos. *See* Robert Romano Dep. Ex. P-16, Linda Romano Dep. Ex. P-17. In their

6

Treasure Coast is located 1.4 miles from an AAMCO franchise operated by John Santagata. *See* Google Map Printout, Ex. P-10. Santagata's AAMCO franchise is located on the main coastal highway in Stuart, Florida. *Id.* Santagata testified at the trial. He explained that his customers had mentioned Treasure Coast to him. Santagata also stated that since Treasure Coast opened, his sales have decreased, but he did not know whether his lost business was due to Treasure Coast or to the two other automotive repair shops in the area.

When the Romanos opened Treasure Coast, they did not take any business with them from Hollywood, Florida. At the trial, Mr. Romano explained that Treasure Coast's business primarily consists of general automotive repairs, such as brakes repairs, water pump repairs, and oil changes. He estimated that Treasure Coast receives approximately three transmission repairs per month. Mr. Romano testified that when the Romanos decided to open Treasure Coast, they did not intend to violate the non-compete provision and were not aware of the non-compete provision when they were looking at possible locations for their new business or when they settled on the Stuart, Florida location.

   f.  **AAMCO Files Lawsuit**

AAMCO learned about Treasure Coast from John Santagata, the Stuart, Florida AAMCO franchisee. On September 11, 2013, AAMCO sent the Romanos a Cease and Desist Letter, notifying the Romanos that they were violating the non-compete provision of their Franchise Agreement and demanding that they cease immediately. *See* Cease and Desist Letter, Ex. P-12.

---

depositions, the Romanos responded to many questions with "I don't recall" or "I don't know," even in response to questions about their contemporaneous decisions regarding their operation of Treasure Coast. *See, e.g.*, Robert Romano Dep. 31:9-16 (stating repeatedly, in response to questions about Mr. Romano's involvement in finding the location for Treasure Coast, "I don't recall"). Even taking the Romanos' *pro se* status into account, I found their deposition testimony to be incredible and intentionally evasive. Their deposition testimony and their inconsistent answers cast doubt on their credibility. At the trial, however, the Romanos were forthcoming and provided information about their conduct leading up to their opening of Treasure Coast. Upon consideration of the quality of the Romanos' knowledge, understanding, and memory of the events in question, observation of their appearance, behavior, and demeanor while testifying at trial, and consideration of their interests in the outcome of the trial, I find the Romanos' testimony on the stand at the trial credible.

The Romanos did not comply with AAMCO's request, and continued to operate Treasure Coast at the Stuart, Florida location. On September 30, 2013, AAMCO filed suit against the Romanos for a permanent injunction to enforce the non-compete provision of the Franchise Agreement, as preserved by the Termination Agreement. AAMCO also seeks costs and attorneys' fees.

### III.   STANDARD OF REVIEW

In deciding to grant permanent injunctive relief, a court must consider whether: (1) the moving party has shown actual success on the merits; (2) the movant will be irreparably injured by the denial of injunctive relief; (3) on balance, the harm to the moving party from not granting the injunction outweighs the harm to the non-moving party from granting the permanent injunction; and (4) the injunction would be in the public interest. *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156-57 (2010); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (internal quotation marks and citation omitted). Injunctive relief "should be no broader than necessary to provide full relief to the aggrieved plaintiff." *McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990). "The decision whether to grant or deny injunctive relief is an act of equitable discretion by the district court . . . ." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### IV.   ANALYSIS AND CONCLUSIONS OF LAW

Under Pennsylvania law,[5] "mandating compliance with a covenant not to compete is disfavored; it is, however, appropriate where the covenant is [1] 'incident to an employment relationship between the parties; [2] the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and [3] the restrictions imposed are reasonably limited in duration and geographic extent.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Hess v. Gebhard Co.*, 808 A.2d 912, 917 (Pa. 2002)). AAMCO has established

---

[5] There is no dispute that Pennsylvania law applies to the Franchise Agreement and the Termination Agreement.

that the non-compete, Section 19.2 of the Franchise Agreement, was incident to an employment relationship because it was included in the Franchise Agreement between AAMCO and the Romanos. *See Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 212 (Pa. 1976) (treating non-compete covenants in franchise agreements as non-compete covenants in employment contracts). Therefore, AAMCO has satisfied the first requirement for the enforceability of a covenant not-to-compete in Pennsylvania.

### a. Reasonably Necessary to Protect the Employer's Legitimate Business Interests

AAMCO has established the second requirement for the enforceability of a covenant not-to-compete in Pennsylvania, that the covenant is reasonably necessary for the protection of the employer. In order to be reasonably necessary for the protection of the employer, a covenant must be "tailored to protect legitimate business interests." *Victaulic*, 499 F.3d at 235. Legitimate business interests include "trade secrets, confidential information, good will, and unique or ordinary skills," as well as the employer's interest in "not allowing competitors to profit from an employee's specialized training and skills." *Id.* (internal citation and quotation marks omitted). A covenant not-to-compete based on the employer's desire "to eliminat[e] or repress[] competition or to keep the employee from competing so that the employer can gain an economic advantage," however, "will not be enforced." *Hess*, 808 A.2d at 920-21.

A franchisor also has a legitimate and protectable business interest in the "franchise itself." *Piercing Pagoda*, 351 A.2d at 211. A franchisor's interest in the "franchise itself" reflects the service that a franchisor provides; namely, the licensing of the franchise to the franchisee and the benefits that follow. *Id.* These benefits include training the franchisee, providing the franchisee with initial inventory, support, and assistance with market and customer development, and site identification and development. *Id.* The use of the franchisor's name by

its franchisees is another protectable interest. *Id.* at 211-212 (citing *Drug-Fair Community Drug Co. v. Drug-Fair, Inc.*, 309 A.2d 363 (1973)).

AAMCO has established that it has a protectable business interest in the franchise itself. The testimony and the documentary evidence presented at trial demonstrate that AAMCO invests time and resources to develop proprietary business methods and procedures for its share of the transmission repair industry. AAMCO gives its franchisees access to these resources as well as intensive training in its approach to customer retention, business development, marketing and advertising, and technological procedures. AAMCO franchisees also obtain the use of AAMCO's name and trademark to operate their businesses. Therefore, AAMCO has a legitimate interest in its franchise brand that can be validly protected by a covenant not-to-compete.

### b. Reasonableness of Restrictions

Even though AAMCO has established that it has a legitimate business interest that can be protected by a non-compete, the non-compete provision must be reasonably limited in scope to be enforceable. A court will enforce a covenant not-to-compete in a franchise agreement under Pennsylvania law "where the restrictions are reasonably necessary for the protection of the franchisor without imposing undue hardship on the franchisee and the restrictions are reasonably limited as to duration of time and geographical extent." *Piercing Pagoda*, 351 A.2d at 212. When a covenant not to compete "imposes restrictions broader than necessary to protect the employer," Pennsylvania courts will only "grant enforcement limited to those portions of the restrictions that are reasonably necessary for the protection of the employer." *Hess*, 808 A.2d at 920 (citation omitted).

These restrictions must be reasonably limited in duration and geographic extent.

*Piercing Pagoda*, 351 A.2d at 212.  "Whether a covenant not to compete is unreasonable is a holistic inquiry . . . . It requires balancing the employer's need to protect its investment and disclosures against the employee's need to earn a living in his chosen field and the public interest, and then determining whether the covenant comes reasonably close to that balance." *Victaulic*, 499 F.3d at 238 (citing *Hess*, 808 A.2d at 917).  "In this Information Age, a *per se* rule against broad geographic restrictions would seem hopelessly antiquated, and, indeed, Pennsylvania courts . . . have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee's duties."  *Id.* at 237.  The Romanos bear the burden of establishing unreasonableness.  *Id.* at 234 (citing *WellSpan Health v. Bayliss*, 869 A.2d 990, 999 (Pa. Super. Ct. 2005)).

The non-compete provision in the Franchise Agreement prohibits the Romanos from "directly or indirectly" engaging in transmission repairs "within a radius of ten (10) miles of the former center or any other AAMCO center" for a two year period.  Franchise Agreement § 19.2(b), Ex. P-2.  The Romanos contend that the provision is broader than necessary to protect AAMCO's interests.  The Romanos argue that the covenant's geographic restriction – a ten mile radius from any AAMCO center – is overbroad because it applies everywhere AAMCO operates, across the United States and Canada.  During the trial, the Romanos explained that they did not have bad intentions when they decided to open Treasure Coast in Stuart, Florida, more than ninety miles from their former AAMCO franchise location.[6]  Mr. Romano testified that they

---

[6] The Romanos stressed, and AAMCO did not contest, that the Romanos did not intentionally violate their non-compete agreement with AAMCO when they chose the Stuart, Florida location for their new business.  The Romanos emphasized that AAMCO did not remind them of the non-compete provision in their communications with the Romanos leading up to the Termination Agreement and that the Termination Agreement only referred to the non-compete by its section number, and did not re-state it in full.  I recognize that AAMCO did not re-state the terms of the non-compete or point out the import of its terms to the Romanos when the Romanos ended their relationship with AAMCO.  I find it credible that the Romanos, who were represented by counsel when they sold their AAMCO franchise in Hollywood, Florida and signed the Termination Agreement with AAMCO, did not intentionally breach the non-compete provision of the Franchise Agreement.

were limited by their financial situation and could not freely look across the United States, or even across the state of Florida, to select a financially feasible location for their business. Due to the ubiquity of AAMCO locations in Florida, the Romanos argue that enforcing the geographic restriction would prohibit them from operating their business anywhere along the Florida coast. In response, AAMCO admitted a map into evidence that identified the location of every AAMCO center in Florida. *See* Map of Florida AAMCO Locations, Ex. P-18. AAMCO identified a number of locations in Florida where the Romanos could open a transmission repair business and remain in compliance with the non-compete provision. *See id.*

Although the Romanos could have opened their business within the state of Florida and remained in compliance with the non-compete provision, I find the ten-mile radius from any AAMCO franchise anywhere unduly burdensome and overly broad. First, the restriction is unduly burdensome on the Romanos. The Romanos completely relinquished their share of the transmission repair business in Hollywood, Florida. When they sold their Hollywood, Florida franchise, they relocated ninety miles away and did not take any of their customers with them. Treasure Coast does not compete with their former AAMCO franchise or any AAMCO franchise in the Hollywood, Florida area. Further, there is no evidence, and no allegation, that the Romanos have used AAMCO's name, mark, or goodwill to solicit business.[7] In addition, even though AAMCO filed this suit in September 2013, two months after the Romanos opened

---

[7] AAMCO does not have a trademark infringement claim against the Romanos. Despite this, at trial, AAMCO questioned Mr. Romano about his management of Treasure Coast's website. AAMCO then offered the testimony of Derik Beck as a rebuttal witness. Beck testified that he had examined a video of Mr. Romano that was uploaded to YouTube and available on Treasure Coast's website. Beck stated that "AAMCO" had been selected as one of the meta-tags for the video, resulting in the video appearing as a hit for internet searches involving AAMCO. According to Beck's testimony, the person who uploaded the video had to have selected "AAMCO" as an identifying tag for the video. In response, Linda Romano testified that she was the person who had uploaded the video, and that she did not check the "AAMCO" tag, nor did she have any knowledge about the tagging process. Mrs. Romano testified that she did not know why "AAMCO" was selected as a tag. I find Linda Romano's testimony credible, and do not find that the Romanos attempted to use AAMCO's name to attract viewers to their website.

Treasure Coast, the Romanos have continued to operate Treasure Coast for the past two years, and have therefore committed significant time, effort, and resources to maintain their business at its current location.[8]  Therefore, the non-compete places an undue burden on the Romanos.

The non-compete provision is also overly broad because it is not reasonably tailored to protect AAMCO's interest in the "franchise itself."  AAMCO contends that other franchisees will be encouraged to violate their non-compete covenants, which, in turn, will lower the value of an AAMCO franchise.  At the trial, Robert J. Rajkowski, AAMCO's Chief Operating Officer, testified that the Romanos' access to AAMCO's training, support, and proprietary procedures and business strategies just five months before opening Treasure Coast gives them an unfair competitive and financial advantage against AAMCO franchises.  However, the Romanos demonstrated at trial that their knowledge and experience in automotive and transmission repairs predates their relationship with AAMCO.  Robert Romano knew how to conduct automotive and transmission repairs from his fifteen years' experience in the field prior to becoming an AAMCO franchisee, and thus did not acquire his skills solely from AAMCO's training programs.

While I recognize AAMCO's interests in protecting its system of franchises and limiting the disclosure of its training and procedural methods, these interests are limited in this case. Unlike other cases, in which AAMCO has sought to enforce its non-compete agreements against rogue franchisees who infringe on AAMCO's trademark or operate a competing business in the same location of the former franchise,[9] in this case there is no allegation or evidence that the

---

[8] AAMCO did not seek preliminary injunctive relief in this case, and the Romanos have continued to operate Treasure Coast for the duration of this suit.
[9] *See, e.g.*, *AAMCO Transmissions, Inc. v. Singh*, No. 12-2209, 2012 WL 4510928, at *3 (E.D. Pa. Oct. 1, 2012) (enforcing a similar non-compete provision against a former franchisee after the franchisee began operating a competing business within ten miles from his former center, referenced his former position with AAMCO to advertise his new competing business, and negatively mentioned the AAMCO franchise brand on his competing business's website); *Otiogiakhi v. AAMCO Transmissions, Inc.*, No. 11-4620, 2011 WL 5825953, at *1-2 (D.N.J. Nov. 17, 2011) (enforcing a similar non-compete provision against a former franchisee who continued to operate a transmission repair business at his former AAMCO franchise site under the AAMCO name and mark after AAMCO

13

Romanos, by operating Treasure Coast, compete with their former Hollywood, Florida AAMCO franchise or infringe upon AAMCO's protected marks. Instead, the facts of this case suggest that the Romanos, who operated an AAMCO franchise for over two decades, amicably ended their relationship with AAMCO, moved ninety miles away, and started their own business months later, did not act in bad faith and did not set out to abuse the franchise system or unfairly compete with their former franchise at AAMCO's expense. While AAMCO has a legitimate interest in protecting its franchise system and preserving its franchise training and support materials for AAMCO franchisees, the scope of the non-compete provision, based on the facts of this case, is overly broad.

"Pennsylvania courts will modify, or blue pencil, non-compete agreements if the restriction is too broad but the franchisor is entitled to some protection." *AAMCO Transmissions, Inc. v. Dunlap*, No.11-4009, 2011 WL 3586225, at *8 (E.D. Pa. Aug. 16, 2011) (citing *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254 (Pa. 1976); *Hillard v. Medtronic, Inc.*, 910 F. Supp. 173, 177 (M.D. Pa. 1995)); *see also Victaulic*, 499 F.3d at 238 n.7 (noting that "absent bad faith, Pennsylvania courts . . . attempt to blue pencil covenants before refusing enforcement altogether"). I will limit the geographic scope of the non-compete to a ten mile radius of any AAMCO franchise within Broward County, Florida, the county where the Romanos' former franchise was located. *See Dunlap*, 2011 WL 3586225, at *8 (finding the a ten mile radius restriction of a similar non-compete covenant with AAMCO unreasonable because it would "apply across the United States and Canada," and limiting the covenant to a ten-mile radius from

---

terminated his franchise agreement for intentionally underreporting his franchise sales); *AAMCO Transmissions, Inc. v. Dunlap*, No.11-4009, 2011 WL 3586225, at *2-3 (E.D. Pa. Aug. 16, 2011) (enforcing a modified non-compete provision against a former franchisee who continued to operate a transmission repair business at his former AAMCO franchise site under the AAMCO name and mark after AAMCO terminated his franchise agreement for failing to pay franchise fees and otherwise meet the franchisee obligations); *AAMCO Transmissions, Inc. v. Graham*, Nos. 89-4976 & 89-6379, 1990 WL 118050, at *1 (E.D. Pa. Aug. 9, 1990) (enforcing a modified non-compete provision against former franchisees who continued to operate a transmission repair business at their former AAMCO franchise sites under the AAMCO name and mark after AAMCO terminated their franchise agreement).

the former AAMCO center for one year); *AAMCO Transmissions, Inc. v. Graham*, Nos. 89-4976 & 89-6379, 1990 WL 118050, at *3 (E.D. Pa. Aug. 9, 1990) (finding the ten mile radius restriction of a similar non-compete covenant with AAMCO "unduly burdensome" on the franchisee because it was "overly broad," and limiting the covenant's application to the metropolitan area surrounding the franchisee's former franchises for a period of one year). *But see AAMCO Transmissions, Inc. v. Singh*, No. 12-2209, 2012 WL 5829782, at *4 (E.D. Pa. Nov. 16, 2012) (finding that the non-compete covenant with AAMCO was reasonable in both its two-year duration and ten mile radius from any AAMCO center); *Otiogiakhi v. AAMCO Transmissions, Inc.*, No. 11-4620, 2011 WL 5825953, at *5-6 (D.N.J. Nov. 17, 2011) (finding the ten mile from any AAMCO center limitation "clearly reasonable" in a similar AAMCO non-compete covenant).[10]

      In sum, I find the non-compete provision, as modified to limit the Romanos from engaging in the transmission repair business within a ten-mile radius from any AAMCO franchise within Broward County for two years, enforceable under Pennsylvania law. At trial, the Romanos established that they conduct transmission repairs only at Treasure Coast. That Treasure Coast is located in Stuart, Florida, ninety miles from Hollywood, Florida and outside of Broward County is not in dispute. The Romanos have not violated the non-compete provision as modified. Therefore, I find that AAMCO has not demonstrated actual success on the merits. Because AAMCO has not demonstrated actual success on the merits, AAMCO is not entitled to a permanent injunction, and I need not address the remaining requirements for the issuance of a permanent injunction.

---

[10] "A restrictive covenant found to be reasonable in one case may be unreasonable in others." *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 734 (Pa. Super. Ct. 1995).

## VI. CONCLUSION

I find that the non-compete covenant is enforceable, as modified to prohibit the Romanos from engaging in the transmission repair business within a ten mile radius from their former AAMCO franchise or any other AAMCO franchise in Broward County for a period of two years. The Romanos, by conducting their transmission repair business solely at Treasure Coast in Stuart, Florida, have not breached the covenant. Because I find that AAMCO has not established actual success on the merits, a permanent injunction will not issue. However, because I find the non-compete provision enforceable as modified, the Romanos' counter claim for a declaratory judgment that the covenant is not enforceable will be denied.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:              Copies **MAILED** on _____ to: